# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2482

_____

|                               |   |
|-------------------------------|---|
| United States of America,     | * |
|                               | * |
| Appellee,                     | * |
|                               | * |
| v.                            | * |
|                               | * |
| Arlie D. Maggard,             | * |
|                               | * |
| Appellant.                    | * |


_____

No. 97-2483

_____

Appeals from the United States
District Court for the
Western District of Missouri.

|                               |   |
|-------------------------------|---|
| United States of America,     | * |
|                               | * |
| Appellee,                     | * |
|                               | * |
| v.                            | * |
|                               | * |
| Daisy Dawn Maggard,           | * |
|                               | * |
| Appellant.                    | * |

_____

No. 97-3180
_____

United States of America,    *

        *

       Appellee,    *

        *

    v.    *

        *

Timothy J. Maggard,    *

        *

       Appellant.    *

_____

Submitted:  January 15, 1998

Filed:  September 18, 1998
_____

Before LOKEN, FLOYD R. GIBSON, and MURPHY, Circuit Judges.
_____

FLOYD R. GIBSON, Circuit Judge.

In these direct criminal appeals, Arlie D. Maggard, Daisy Dawn Maggard, and Timothy J. Maggard, (collectively "the appellants") challenge their convictions and sentences, claiming the district court[1] committed the following errors.  Arlie and Daisy each challenge the sufficiency of the evidence against them and various sentencing

_____

[1]The HONORABLE RUSSELL G. CLARK, United States District Judge for the Western District of Missouri.

issues.[2]  Tim Maggard challenges the admission of evidence of prior offenses, the court's refusal to offer an addict instruction, and several sentencing issues.[3]  For the reasons set forth below, we affirm.

## I.  BACKGROUND

Arlie, Daisy and Tim[4] challenge their convictions and sentences which resulted from an investigation into methamphetamine distribution in the Springfield, Missouri area.  Between March 3, 1995 and July 11, 1996, local law enforcement agents executed several search warrants at the appellants' residences.  Searches of Arlie's and Daisy's residence uncovered a plastic baggy containing 8.31 grams of a substance containing methamphetamine and syringes containing methamphetamine residue.  A July 11, 1996 search of Arlie's truck uncovered several baggies containing a total of 10 grams of methamphetamine.  Searches of Tim's residence resulted in the seizure of drug scales, plastic baggier, a cutting agent commonly added to methamphetamine, a drug ledger, and over $3,000 in cash.

Following a September 23, 1995, search of Tim's residence, Tim was charged with and pleaded guilty to the state offense of distribution, delivery and manufacture

---

[2]Arlie and Daisy both challenge the drug quantities that the district court attributed to them at sentencing.  Arlie  challenges the district court's upward adjustment of his sentence based upon his role in the offense and obstruction of justice.  Additionally, Arlie challenges the district court's failure to make a finding regarding the type of methamphetamine attributed to him.

[3]Tim challenges the drug quantity that the district court attributed to him, the court's failure to make a finding regarding the type of methamphetamine attributed to him, and his classification under the Sentencing Guidelines as a career offender.

[4]Arlie and Daisy Maggard are husband and wife.  Tim and Arlie Maggard are brothers.

of a controlled substance.  Tim  began serving the five-year sentence imposed for that offense on October 18, 1995.[5]

On September 18, 1996, a Grand Jury returned a twelve-count, second superseding indictment in which Arlie, Daisy and Tim, along with four other individuals,[6] were charged with participating in a conspiracy to distribute methamphetamine between October, 1994 and July 11, 1996.  See  21 U.S.C. § 846 (1994).  The indictment also charged Arlie with two counts of possession with intent to distribute methamphetamine and Daisy with one count of possession with intent to distribute methamphetamine.  See 21 U.S.C. §841(a)(1) (1994).  Tim was also charged with two counts of being a felon in possession of a firearm, see 18 U.S.C. § 922(g)(1) (1994), and with one count of criminal forfeiture, see 21 U.S.C. § 853 (1994).  The district court tried the appellants simultaneously.

Over the course of a three-day trial, the government offered the testimony of fourteen law enforcement officers, two participants in the charged conspiracy,[7] and four other individuals[8] admittedly involved in the methamphetamine culture in southern

---

[5]Therefore, Tim was incarcerated during the last nine months of the charged conspiracy.

[6]Roger Hilburn, Mary Schumacher, Leo Willis, and Clarence Van Zant were each charged with conspiracy to distribute methamphetamine.  Roger Hilburn was also charged with one count of possession with intent to distribute methamphetamine.  Mary Schumacher was charged with three counts of distribution of methamphetamine.  Leo Willis was charged with one count of possession with intent to distribute methamphetamine and one count of distribution of methamphetamine.

[7]Roger Hilburn and Mary Schumacher each pleaded guilty to conspiracy charges and testified for the prosecution in exchange for a downward departure in their sentences.

[8]Martin Bean, John Mahan, Patty Bristol, and Sue Ann Evans testified for the government.  Bean, Mahan and Evans each testified under an agreement with the government that they would not be prosecuted for any incriminating statements made

Missouri.  The government's witnesses testified that Arlie and Daisy were at the center of a large methamphetamine distribution conspiracy and that the husband and wife team provided methamphetamine to at least four people who acted as distributors of the drugs.  Tim Maggard, Arlie's brother, was one of those distributors.  This testimony also named Roger Hilburn, Leo Willis and Clarence Van Zant as distributors of methamphetamine supplied by Arlie.

Following the presentation of the government's evidence, Arlie and Daisy submitted motions for judgment of acquittal which the district court denied.  After the presentation of the defendants' evidence, Arlie and Tim submitted motions for judgment of acquittal.  The district court also denied these motions.

On January 9, 1997, the jury found Arlie, Daisy and Tim guilty of participating in a conspiracy to distribute methamphetamine.  See 21 U.S.C. § 846.  The jury found Arlie and Daisy guilty of one count of possession with intent to distribute methamphetamine.  See 21 U.S.C. §841(a)(1).  Tim was found guilty of criminal forfeiture.  See 21 U.S.C. § 853.  The trial judge sentenced Arlie to 360 months imprisonment for his role in the conspiracy and 240 months imprisonment for possession with intent to distribute methamphetamine, both sentences to run concurrently.  The trial judge sentenced Daisy to 235 months imprisonment for the conspiracy and possession charges, sentences to run concurrently.  Tim was sentenced to 360 months imprisonment for his role in the conspiracy.  In this consolidated appeal, the appellants challenge their convictions and sentences.

---

during their testimony.  Bristol testified under an agreement with the government to reduce her sentence in another case in which she had pleaded guilty to conspiracy to distribute and manufacture methamphetamine.

## II. DISCUSSION
### A. Arlie and Daisy Maggard
#### 1. Sufficiency of the Evidence

Arlie and Daisy each contend that the evidence is insufficient to support their convictions and that the district court erred in denying their motions for judgments of acquittal. "In reviewing the sufficiency of the evidence to support a guilty verdict, we view the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Padilla-Pena, 129 F.3d 457, 464 (8th Cir. 1997), cert. denied 118 S. Ct. 2063 (1998). We will uphold a conviction which is supported by substantial evidence. See United States v. Black Cloud, 101 F.3d 1258, 1263 (8th Cir. 1996) (citations omitted). Substantial evidence need not exclude every reasonable hypothesis of innocence, but must be sufficient to convince the jury of the defendants' guilt beyond a reasonable doubt. See United States v. Harrison, 133 F.3d 1084, 1085 (8th Cir. 1998) (internal citations and quotations omitted).

Arlie's and Daisy's challenge to the sufficiency of the evidence rests largely upon the fact that the most damaging testimony against them is attributable to other participants in the conspiracy or witnesses whose testimony the government secured with plea agreements or immunity deals. Both appellants argue that the government's evidence was limited to "what some snitches, who clearly were given a motive in their plea deals to say whatever they could against Daisy and Arlie Maggard, could contrive." Appellant's Br. at 23. Arlie and Daisy attack the testimony of the government's witnesses as uncorroborated and generally unreliable. Due to the identity of the government witnesses, the appellants claim that the government failed to produce sufficient evidence upon which to base their convictions.

We find the appellants' challenges unavailing for a number of reasons. In appellants' trial, several witnesses testified to Arlie's and Daisy's role in the distribution

and sale of large quantities of methamphetamine. Roger Hilburn testified that Arlie supplied him with one ounce of methamphetamine per day from October, 1994 until Hilburn was arrested in mid-February, 1995. Hilburn testified that Arlie supplied Tim Maggard and Leo Willis with similar quantities of methamphetamine daily. According to Hilburn, Clarence Van Zant also regularly received methamphetamine from Arlie, although less frequently and in smaller quantities than the other conspirators. Regarding Daisy, Hilburn testified that Daisy regularly accompanied her husband when the methamphetamine was distributed and that Daisy kept track of money owed to the Maggards. Hilburn also testified that Daisy was Arlie's partner in the conspiracy and that Daisy had occasionally hidden drugs on her body, presumably in order to avoid detection.

Other government witnesses testified that Arlie supplied the methamphetamine eventually sold by Tim Maggard, Roger Hilburn, Leo Willis and Clarence Van Zant. Although the government's witnesses did not discuss Daisy's involvement in the conspiracy to the same extent as Arlie's and Tim's, more than one witness testified that Daisy was Arlie's partner in the distribution and sale of methamphetamine. For example, testimony at trial revealed that Daisy would frequently accompany Arlie when the drugs were distributed. Patty Bristol testified that Daisy had helped Bristol manufacture methamphetamine on occasion.

It is well established that "it is the sole province of the jury to weigh the credibility of a witness." United States v. Wright, 119 F.3d 630, 634 (8th Cir. 1997) (internal citations and quotations omitted). As the trial record makes clear, appellants' counsel cross-examined each witness with whom the government had made plea agreements and attempted to expose the witnesses' potential for bias and self-interest. Appellants' counsel also appropriately attempted to raise questions regarding the credibility of the government's witnesses in closing arguments. The jury's choice to credit the testimony of those witnesses was within its province, and we will uphold the conviction if substantial evidence supports it. See United States v. Bass, 121 F.3d

1218, 1221 (8th Cir. 1997); United States v. Cabrera, 116 F.3d 1243, 1245 (8th Cir. 1997). After a thorough review of the record, we cannot say that the evidence was insufficient to convince a reasonable juror of appellants' guilt beyond a reasonable doubt. We therefore affirm Arlie's and Daisy's convictions.

## 2. Sentencing Issues

Arlie and Daisy also challenge their sentences that the district court imposed, arguing that the court erred in the amount of drugs attributed to them. At appellants' sentencing hearings, the district court found that Arlie and Daisy were each responsible for between 10 and 30 kilograms of methamphetamine. In accordance with the Sentencing Guidelines, Arlie received a 360 month sentence, and Daisy received a 235 month sentence for their offenses.

The law regarding the government's burden of proof, duties of the sentencing court, and the standard of review concerning the determination of drug quantities and application of the Sentencing Guidelines is well established. The government must prove, by a preponderance of the evidence, the quantities of drugs attributed to a defendant for sentencing purposes. See Padilla-Pena, 129 F.3d at 467. The district court is required to make findings of fact and rule on unresolved objections to the presentence report. See Fed. R. Crim. P. 32(c)(1). A sentencing judge who also presided over the trial, as in this case, may base his factual findings on the trial record and is not required to hold an evidentiary hearing prior to sentencing. See United States v. Wiggins, 104 F.3d 174, 178 (8th Cir. 1997). We review a sentencing court's findings of fact regarding the quantity of drugs attributed to defendants for clear error. See United States v. Payne, 119 F.3d 637, 645 (8th Cir.), cert. denied, 118 S. Ct. 454 (1997).

Arlie and Daisy contend that their cases should be remanded for re-sentencing because the sentencing judge failed to specifically rule or estimate the amount of drugs attributable to them.  We disagree.

Both appellants were convicted of conspiracy to distribute methamphetamine and are therefore responsible for "all reasonably foreseeable acts . . . of others in furtherance of the jointly undertaken criminal activity."  United States Sentencing Commission, Guidelines Manual, §1B1.3(a)(1)(B) (Nov. 1995) [hereinafter U.S.S.G.].  Testimony at trial demonstrated that appellants were at the center of a large methamphetamine distribution ring.[9]  The sentencing judge could properly consider the total amount of drugs involved in the conspiracy in determining the quantity of drugs attributable to these appellants.  Furthermore, the Sentencing Guidelines provide that "[w]here . . . the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."  U.S.S.G. §2D1.1, comment. (n.12) (Nov. 1995).

In appellants' cases, the government admittedly relied upon the testimony of co-conspirators and immunized witnesses to establish the scale of the conspiracy because a relatively small amount of drugs was actually seized by law enforcement agents.  Under these circumstances, the sentencing judge's use of witnesses' testimony to establish drug amounts was proper, see United States v. Dierling, 131 F.3d 722, 736 (8th Cir. 1997), cert. denied, 118 S. Ct. 1379 (1998).  Although a more detailed record

---

[9]A sampling of the testimony produced at trial includes evidence that Roger Hilburn, Tim Maggard and Leo Willis each received approximately one ounce of methamphetamine daily at different time periods throughout the duration of the conspiracy.  Tim Maggard also confessed to one of the agents involved in the case that for four to five months he had been distributing approximately four ounces of methamphetamine daily.  Witnesses also testified to having been present and seen large quantities (two pounds on one occasion, five pounds at another time) of methamphetamine in Arlie's possession.

addressing trial testimony and specific amounts would have been preferable,[10] we cannot say that the attribution to appellants of 10 to 30 kilograms of methamphetamine was not supported by a preponderance of the evidence nor that the district court clearly erred when using this amount to determine appellants' sentences.

Arlie Maggard further argues that the district court erred in calculating his offense level. We review the sentencing court's factual determinations for clear error while its interpretation of the Sentencing Guidelines are subject to de novo review. See United States v. Larson, 110 F.3d 620, 627 (8th Cir. 1997). The district court adjusted Arlie's offense level of 36, see U.S.S.G. §2D1.1(c)(2) (Nov. 1995), upward four points for his role as a leader/organizer of the conspiracy, see U.S.S.G. §3B1.1(a), and two points for obstruction of justice, see U.S.S.G. §3C1.1. These enhancements gave Arlie a total offense level of 42, which carries a sentencing range of 360 months to life. See U.S.S.G. Ch. 5, Pt. A. In response to Arlie's contentions, the government correctly

---

[10]At Arlie's sentencing hearing, in response to the government's stated assumption that the district court had attributed between 10 and 30 kilograms of methamphetamine to Arlie, the sentencing judge stated, "Well, I didn't make that finding, but there was between 10 and 30 kilograms of methamphetamine involved for which this defendant is responsible." In sentencing Arlie, the judge also stated that, "The defendant did have more than five people distributing methamphetamine, and he controlled those people. There is a two-point increase for obstruction of justice. The defendant is a career offender." Sent. Tr. at 6-7.

At Daisy's sentencing hearing (which took place immediately prior to Arlie's), the judge stated, "Well, the Court heard the evidence at the time of trial. And the defendant is responsible for all drugs distributed during the conspiracy. The Court finds at least 10 to 30 kilograms of methamphetamine was distributed, and the Court finds the defendant is responsible for all methamphetamine distributed." Sent. Tr. at 12.

The sentencing judge made his findings after hearing appellants' objections to the presentence investigation report and following a summary of the pertinent evidence by the government. The statements by the sentencing judge, while legally sufficient in this case, are not as precise nor expansive as we would prefer drug quantity determinations to be.

notes that the sentence imposed upon Arlie would be the same regardless of the enhancements of which Arlie complains. As a career offender,[11] Arlie's offense level is 37[12] and his criminal history category is VI. See U.S.S.G. §4B1.1. Thus, the appropriate sentencing range for Arlie's convictions would be 360 months to life. See U.S.S.G. Ch. 5, Pt. A. (Nov. 1995). As our independent review of the record convinces us that the sentence imposed was proper, we need not reach the issue of whether the district court erred in adjusting Arlie's offense level upward.

Lastly, Arlie asserts that the district court erred in failing to make a finding as to whether "l-" or "d-" methamphetamine was involved in the conspiracy. Prior to November 1, 1995, the Sentencing Guidelines distinguished between the two types of methamphetamine and mandated harsher sentences for offenses involving d-methamphetamine. See U.S.S.G. §2D1.1, comment. (n.10) (Nov. 1994). The distinction between "l-" and "d-" methamphetamine was eliminated by Amendment 518, which became effective on November 1, 1995. See U.S.S.G. App. C (Nov. 1997). "Some offenses, such as conspiracy, are 'continuing offenses' for which the completion date controls which version of the Sentencing Guidelines should apply." United States v. Reetz, 18 F.3d 595, 598 (8th Cir. 1994) (citations omitted). The conspiracy of which

---

[11]Arlie has a prior felony conviction for first degree sexual assault and a conviction for burglary in the second degree. According to Eighth Circuit precedence, these prior convictions qualify as "crimes of violence" under U.S.S.G. §4B1.2. See United States v. Hascall, 76 F.3d 902, 904-06 (8th Cir.), cert denied 117 S. Ct. 358 (1996) (adopting classification of burglary of a commercial building as a crime of violence for Sentencing Guideline purposes).

[12]The maximum term of imprisonment authorized for a defendant convicted of possession with intent to distribute methamphetamine and conspiracy to distribute methamphetamine is life. 21 U.S.C. §§ 841(b), 846. According to U.S.S.G. §4B1.1, career offenders are subject to the higher offense level of 37 rather than the offense level of 36 as provided by U.S.S.G. §2D1.1(c)(2).

Arlie was convicted occurred between October, 1994 and July 11, 1996.  Therefore, the Sentencing Guidelines applicable to Arlie are those in effect on

July 11, 1996. Therefore, the district court's alleged failure to make a finding as to the type of methamphetamine involved in the conspiracy is not error because such a finding was unnecessary under the November, 1995 guidelines.

### B. Tim Maggard
#### 1. Evidentiary Issues

Tim first contends that his conviction should be reversed due to the admission of materially prejudicial testimony of four government witnesses regarding Tim's prior wrongdoings. Mary Schumacher testified on direct examination that the appellant and her boyfriend had served time in prison together. Tr. at 76. Todd Blair and Scott Lance, law enforcement agents who worked on the investigation of the Maggards, testified on direct examination that they were familiar with Tim Maggard.[13] Tom Noyes, a deputy sheriff at the time of the investigation, testified on cross-examination that he felt that Tim "knew what methamphetamine was from prior investigations." Tr. at 285. These four statements by government witnesses comprise the basis for Tim's request for reversal.

Initially, we note that appellant failed to object to any of the statements at trial. We therefore review the district court's admission of this evidence for plain error. See United States v. Millard, 139 F.3d 1200, 1203 (8th Cir. 1998). We will reverse for plain error only if the error affected the appellant's substantial rights and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." United States v. Robinson, 110 F.3d 1320, 1324 (8th Cir.), cert. denied, 118 S. Ct. 432 (1997) (internal citations omitted).

---

[13]Todd Blair stated, "I observed . . . a white male known as Timothy Maggard, which I was familiar with through other drug investigations." Tr. at 115. Scott Lance testified that Tim Maggard was someone "which I was familiar with in the past." Tr. at 242.

Assuming the admission of evidence concerning Tim's prior prison term and the references to Tim's relationship with prior drug investigations could amount to plain error, see Fed. R. Evid. 404(b), we find the error to be harmless. These four statements cannot be said to have affected Tim's substantial rights nor to have seriously affected the fairness of Tim's trial. After a thorough review of the record, we find that substantial evidence was produced at trial to support appellant's conviction and that these four isolated statements could have had only a slight influence, if any, on the verdict. See United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994).

## 2. Jury Instructions

Tim next argues that the district court's refusal to offer the jury an addict instruction[14] constituted reversible error. While the district court has broad discretion in formulating jury instructions, see United States v. Hester, 140 F.3d 753, 757 (8th Cir. 1998), a defendant's request for a specific instruction will be granted if the instruction is supported by the evidence and reflects a correct statement of the law. See United States v. Tucker, 137 F.3d 1016, 1036 (8th Cir. 1998). "The defendant is not entitled to a particularly worded instruction where the instructions given, when viewed

---

[14]The instruction offered by appellant stated:

> The testimony of a drug addict must be examined and weighed by the jury with greater care than the testimony of a witness who does not abuse drugs.
>
> An addict may have a constant need for drugs, and for money to buy drugs, and may also have a greater fear of imprisonment because his or her source of drugs may be cut off. Think about these things and consider whether his or her testimony may have been influenced by the government's promise.
>
> Do not convict the defendant based on the unsupported testimony of such a witness, standing alone, unless you believe his or her other testimony beyond a reasonable doubt.

Appellant's App. at 2.

-14-

as a whole, correctly state the applicable law and adequately and fairly cover the substance of the requested instruction." United States v. Parker, 32 F.3d 395, 400 (8th Cir. 1994) (citation omitted). We review the district court's formulation of jury instructions for an abuse of discretion. Id.

The district court gave the jury a general cautionary instruction[15] regarding the testimony of persons with whom the government had reached plea agreements. Appellant argues that this instruction was insufficient and that the testimony of Roger Hilburn, Mary Schumacher, Martin Bean, and Patty Bristol clearly established each witness as a drug addict, thus compelling an addict instruction. This court has adopted a case-by-case approach to determining whether an addict instruction is necessary. See United States v. Hoppe, 645 F.2d 630, 633 (8th Cir. 1980), cert. denied, 454 U.S. 849 (1981). Factors which will obviate the need for an addict instruction include: a dispute as to whether the informant is actually an addict; cross-examination regarding the

---

[15]The instruction stated:

> You have heard evidence that Roger Hilburn, Mary Schumacher, and Patricia Bristol have made plea agreements with the government. Dependent upon the extent of their cooperation, the government has agreed to move for a downward departure pursuant to the Sentencing Guidelines. You have also heard evidence that Martin Bean, John Mahan, and Sue Evans have received a promise from the government that they will not be prosecuted in federal court. Their testimony was received in evidence and may be considered by you. You may give their testimony such weight as you think it deserves. Whether or not their testimony may have been influenced by the plea agreement or the government's promise is for you to determine.
>
> The witnesses' guilty plea cannot be considered by you as any evidence of the defendant's guilt. The witnesses' guilty plea can be considered by you only for the purpose of determining how much, if at all, to rely upon the witnesses' testimony.

Appellant's App. at 3.

informant's drug addiction; an instruction to the jury to view the informant's testimony with care; and corroboration of the informant's testimony. See id. All four factors need not be present to dispense with the requirement of an addict instruction. See Parker, 32 F.3d at 401-02.

Here, we find that three of the factors are present. Each of the witnesses whom appellant claims are addicts testified that they were no longer using drugs at the time of trial. Appellant's and his co-defendants' counsel strenuously cross-examined the witnesses regarding their drug use. The witnesses corroborated each other's testimony. Other witnesses, including law enforcement agents, further corroborated the challenged witnesses' testimony. After reviewing the record, we find that appellant's proposed addict instruction was not supported by the evidence. The instruction given by the district court was adequate, and the court did not abuse its discretion by refusing to give appellant's proposed instruction.

### 3. Sentencing Issues

Tim raises three sentencing issues on appeal. Tim claims the district court erred in sentencing him under the Sentencing Guidelines that became effective on November 1, 1995. Tim also challenges the district court's calculation of the quantity of drugs attributed to him. Lastly, Tim asserts that the district court erred in classifying Tim as a career offender. We review the district court's factual findings at sentencing for clear error while our review of the district court's interpretation of the Sentencing Guidelines is de novo. See United States v. Larson, 110 F.3d 620, 627 (8th Cir. 1997).

Tim asserts that his sentence should have been governed by the Sentencing Guidelines in effect on October 18, 1995,[16] and that the district court erred in failing to make specific findings as to the type of methamphetamine involved in the conspiracy.

---

[16]Tim began serving a five-year prison sentence for a state offense on that date.

As discussed above in Part A.2. of this opinion, prior to November 1, 1995, the Guidelines maintained a distinction between "l-" and "d-" methamphetamine which Amendment 518 eliminated effective November 1, 1995. Tim contends his incarceration on October 18, 1995 prevented his participation, past that date in the conspiracy of which he was convicted. Conspiracy is a continuing offense from which a participant must affirmatively withdraw in order to end his legal liability. "A defendant must take affirmative action, either making a clean breast to the authorities or communicating his withdrawal in a manner reasonably calculated to reach co-conspirators. . . . Mere cessation of activities is not enough." United States v. Granados, 962 F.2d 767, 773 (8th Cir. 1992) (internal citations and quotations omitted). Furthermore, a defendant may be guilty of conspiracy even if the purpose of the conspiracy is being effected while he is incarcerated. See United States v. Casares-Cardenas, 14 F.3d 1283, 1288 (8th Cir.), cert. denied, 513 U.S. 849 (1994).

Tim bears the burden of proving his withdrawal from the conspiracy. See Granados, 962 F.2d at 773. While Tim offered no evidence at trial to support his claim of withdrawal from the conspiracy, there was testimony from Patty Bristol indicating that Tim did not take the affirmative action necessary to terminate his participation in the conspiracy.[17] As a continuing offense, sentencing for conspiracy convictions are controlled by the Sentencing Guidelines in effect at the time of the completion of the conspiracy. See United States v. Reetz, 18 F.3d 595, 598 (8th Cir. 1994). Here, the jury found Tim guilty of participating in a conspiracy that began in approximately October of 1994 and ended with Arlie and Daisy Maggard's arrest on July 11, 1996. The district court sentenced Tim according to the Sentencing Guidelines in effect on that date. In so doing, we conclude that the district court did not err.

---

[17]Patty Bristol testified that she had been introduced to Arlie Maggard by Tim following the September 23, 1995 search of Tim's home which resulted in his incarceration. Bristol stated that Tim told her that "[h]e believed he would be going up, . . . and just continue our business on with Arlie." Tr. at 8.

Next, Tim argues that the district court erred in calculating the quantity of drugs attributed to him. The legal standards regarding drug quantity determinations is addressed above at Part 2.A. of this opinion. After reviewing the record and again noting that a co-conspirator is responsible for all reasonably foreseeable acts in furtherance of the jointly undertaken criminal activity, see U.S.S.G. §1B1.3(a)(1)(B), we cannot say that the sentencing judge clearly erred in attributing 10 to 30 kilograms of methamphetamine to Tim.

Tim also challenges his sentencing status as a career offender. Tim argues that his prior conviction for second degree burglary of an unoccupied residence should not be considered in assessing career offender status under the Sentencing Guidelines. However, it is well-settled law in this Circuit that second degree burglary is considered a "crime of violence" for career offender status under U.S.S.G. §4B1.2. See United States v. Reynolds, 116 F.3d 328, 330 (8th Cir. 1997). We therefore find Tim's final argument to be without merit.

## III.   CONCLUSION

For the reasons set forth in this opinion, we affirm the judgment of the district court.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.