# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1568

_____

United States of America,       *

         Appellee,        *

     *      Appeal from the United States

     v.              *      District Court for the

     *      District of Minnesota.

Steven Sylvester Tucker,      *

         Appellant.       *

_____

Submitted: October 23, 1998
Filed: February 23, 1999

_____

Before McMILLIAN, JOHN R. GIBSON, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Steven Sylvester Tucker appeals his convictions on two counts of robbery and two firearm violations. He contends that the evidence is insufficient to support his convictions, and that the district court[1] erred in admitting in-court identification testimony and in instructing the jury on accomplice testimony. We affirm.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

I.

In May 1997, a federal indictment charged Tucker with the robbery of two federally insured credit unions, namely the Cloquet Co-op Credit Union and the Duluth Teachers' Credit Union, in violation of 18 U.S.C. § 2113(a). The indictment also charged Tucker with one count of using or carrying a firearm during and in relation to the robbery of the Duluth Teachers' Credit Union, in violation of 18 U.S.C. § 924(c)(1); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g), 924(a)(2). A jury convicted Tucker on each count.

Tucker first challenges whether the evidence is sufficient to sustain his convictions. "In reviewing the sufficiency of the evidence to support a guilty verdict, we view the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Maggard, 156 F.3d 843, 846 (8th Cir. 1998) (internal quotations omitted), petition for cert. filed (U.S. Jan. 22, 1999) (No. 98-7789). We will not lightly overturn a jury's verdict, and we must uphold the verdict "if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." United States v. Gillings, 156 F.3d 857, 860 (8th Cir. 1998) (internal quotations omitted).

The evidence, viewed in the light most favorable to the verdict, supports the following facts. A lone masked man entered the Cloquet Co-op Credit Union in Duluth, Minnesota, on February 5, 1996, yelling that everyone should get down and remember their families and children. He vaulted the teller counter and left with approximately $19,654 in cash. One witness described his car as having a plate including the letters HCJ or HCZ. Minutes before the robbery, a car with the license plate 970 HZJ was stolen one-half block from the credit union and was later found at the University of Wisconsin at Superior (UWS). David Cannon, a friend of Tucker's who lived near the campus, testified that Tucker called him on February 5,

2

1996, the day of the Cloquet Credit Union robbery, asking to be picked up at the UWS campus. Cannon agreed and brought Tucker back to Cannon's apartment where he helped Tucker count a large amount of cash, totaling about $20,000. Tucker told Cannon that he had robbed a bank. Cannon then drove Tucker to a neighborhood known as Park Point, where Tucker hid the money.

On February 14, 1996, Tucker showed up in California to visit an old girl friend, Annette Hooey. Tucker was unemployed, but he paid cash for his hotel room and for several gifts, including a matching pair of Gucci watches. From California, Tucker traveled by air to Cleveland, Ohio, where he used cash to repay an $800 loan to a friend, Russell Fitzgerald. Tucker told Fitzgerald that he had robbed a bank, though Tucker now contends he said this in jest. Another friend, Elton Massey, testified that Tucker told him how he (Tucker) had robbed the credit union near his mother's house, which Massey knew to be the Cloquet Co-op Credit Union.

Another credit union robbery took place on April 26, 1996. Massey admitted his involvement in the second robbery and agreed to cooperate with the authorities. At trial, Massey testified that on April 26, 1996, he, Tucker, and Tucker's brother (Mike) robbed the Duluth Teachers' Credit Union and that he and Steven Tucker had possessed guns during the robbery. Tucker did the talking, ordering everyone present to get down on the floor. Witnesses testified that he told them to remember their families and children. Massey said that Tucker vaulted the teller counter and pointed a small gun in the face of one teller. The three men left the scene with approximately $11,478 in cash.

In a pretrial ruling, a magistrate judge suppressed the results of a pretrial photographic identification procedure as unreliable and lacking an evidentiary basis. At trial, however, Lieutenant Keith Bolin of the police department for the University of Minnesota at Duluth testified concerning his observations on the day of the robbery. He was further permitted to identify Tucker as the passenger he saw in the

3

front seat of a car he observed fleeing from the direction of the Duluth Teachers' Credit Union after the robbery.

During a search of Tucker's apartment, police found a semi-automatic pistol hidden in the basement in an area shared with another apartment. Massey testified that he sold the pistol to Tucker, but it was not the one Tucker had used in the robbery. Hooey said she observed Tucker place the pistol in the ceiling joists of the basement where the police found it. Tucker is a convicted felon.

After reviewing the record on appeal, we conclude that there is sufficient evidence to support Tucker's conviction on each count listed above. There is evidence that Tucker participated in both credit union robberies (counts I and II), that he carried a firearm in the Duluth Teachers' Credit Union robbery (count III), and that he possessed a firearm and hid it in the basement after having been previously convicted of a felony (count IV). Tucker points out conflicting testimony and evidence, and credibility problems with the government's witnesses, but we are mindful that the jury was charged with the duty of resolving such conflicts and making credibility determinations. We will not overturn the jury's verdict as long as "there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." Gillings, 156 F.3d at 860 (internal quotations omitted). We conclude that sufficient evidence exists to support the verdicts.

## II.

Tucker next contends that the district court erred by allowing Bolin's in-court identification of Tucker. "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons

4

v. United States, 390 U.S. 377, 384 (1968). Following a two-step analysis for reviewing the district court's admission of an in-court identification, we must first determine whether the pretrial identification procedure was impermissibly suggestive; if so, "we look to the totality of the circumstances to determine whether the suggestive procedures created a very substantial likelihood of irreparable misidentification." United States v Johnson, 56 F.3d 947, 953 (8th Cir. 1995) (internal quotations omitted); accord Manson v. Braithwaite, 432 U.S. 98, 116 (1977); Neil v. Biggers, 409 U.S. 188, 198 (1972). The central question is "whether under the 'totality of the circumstances' the identification was reliable" despite any suggestive or inappropriate pretrial identification techniques. Neil, 409 U.S. at 199; Mack v. Caspari, 92 F.3d 637, 642-43 (8th Cir. 1996), cert. denied, 117 S. Ct. 1117 (1997). The relevant factors to "consider[] in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil, 409 U.S. at 199-200; accord Manson, 432 U.S. at 114.

Applying these factors, we conclude that there is no "very substantial likelihood of irreparable misidentification." Manson, 432 U.S. at 116. Bolin spoke with investigators on the day of the robbery and gave a description of the front seat passenger as a light-skinned black male with Oriental features. Approximately one year later, Bolin identified Tucker from a photo array. In its pretrial ruling, the magistrate judge suppressed the results of the pretrial photographic identification procedure. While the magistrate judge noted he could not find that the photo array was impermissibly suggestive, he nevertheless held that the pretrial identification was unreliable, finding the photo array to have been haphazardly put together and noting that the photographic identification procedure did not take place until nearly one year after the witness's observations. Bolin did not testify before the magistrate judge at the suppression hearing.

At trial, the district court permitted Bolin to identify Tucker after describing the circumstances and his own observations at the time of the robbery. Bolin testified that on the day of the robbery, he drove toward the credit union in response to a police radio broadcast of the robbery. On his way, he noticed a vehicle with either three or four occupants, which caught his attention as he was rounding a corner because it was coming from the direction of the credit union shortly after the robbery. He observed the driver only briefly but said he focused his attention on the passenger in the front seat, whom he described as a light-skinned black male with an oval or round shaped head consistent with Oriental features.[2] On cross-examination, Bolin admitted that his observation was brief, lasting only approximately 15 seconds.

The circumstances to which Bolin testified gave the district court an independent basis for admitting his testimony. Bolin had an opportunity to view the passenger as he met the car while rounding a corner on his way to the scene, his attention was focused on the car because it was coming from the direction of the robbery shortly after it occurred, and when he spoke to investigators, he gave a description of the front seat passenger which was the same as his trial testimony. Furthermore, the magistrate judge did not conclude that the photographic array was impermissibly suggestive. After reviewing the totality of the circumstances, we conclude that the district court's decision to admit Bolin's in-court identification testimony was supported by the record. The circumstances of Bolin's observations provide an independent foundation for his testimony, and no impermissibly suggestive pretrial procedures rendered his testimony unreliable or created a substantial likelihood of irreparable misidentification. Bolin was subject to cross-examination, and we bear in mind that "evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible

_____

[2]The photographs used in the pretrial procedure are not in the record before this court. At oral argument, the government stated that this description was accurate and Tucker does not argue otherwise.

that they cannot measure intelligently the weight of identification testimony that has some questionable feature."  Manson, 432 U.S. at 116.

## III.

Tucker also contends that the district court erred by rejecting his proposed jury instruction on accomplice testimony.  Tucker requested a jury instruction that would have informed the jury that it could not convict Tucker on the uncorroborated testimony of an accomplice, namely Elton Massey.  The district court refused to give this instruction and instead gave an instruction consistent with the standard cautionary instruction identified in Federal Jury Practice and Instructions § 15.04, by Devitt, Blackmar, Wolff, and O'Malley (4th ed. 1992).  The instruction given advised the jury to examine and weigh the testimony of accomplice Elton Massey with greater care than the testimony of a witness who did not participate in the crime and to determine whether the accomplice testimony is affected by self-interest or his agreement with the government.

> "The defendant is not entitled to a particularly worded instruction where the instructions given, when viewed as a whole, correctly state the applicable law and adequately and fairly cover the substance of the requested instruction."  United States v. Parker, 32 F.3d 395, 400 (8th Cir. 1994) (citation omitted).  We review the district court's formulation of jury instructions for an abuse of discretion.  Id.

Maggard, 156 F.3d at  850.

We conclude that the district court did not abuse its discretion but properly refused to give Tucker's requested instruction because it did not accurately state the law in this circuit.  We have held that "[a]ccomplice testimony is sufficient to support a conviction when it is not incredible or insubstantial on its face."  United States v. Drews, 877 F.2d 10, 13 (8th Cir.1989).  In fact, "we have specifically held that no

7

absolute and mandatory duty is imposed upon the trial court to advise the jury by instruction that they should consider the testimony of an uncorroborated accomplice with caution." United States v. McMasters, 90 F.3d 1394, 1403 (8th Cir. 1996) (internal quotations omitted), cert. denied, 117 S. Ct. 718, 117 S. Ct. 783 (1997); accord United States v. Rockelman, 49 F.3d 418, 423 (8th Cir. 1995). Nevertheless, out of an abundance of caution, the district court advised the jury to consider carefully the accomplice testimony of Elton Massey, using a standard cautionary jury instruction. Tucker simply was not entitled to the instruction he requested, and we find no abuse of the court's discretion by rejecting the proposed instruction.

IV.

Accordingly, for the reasons stated above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT