# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1663

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Patricia A. Grimmett, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 15, 2000

Filed: January 9, 2001

_____

Before WOLLMAN, Chief Judge, LOKEN and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Federal drug conspiracy crimes are subject to the five-year statute of limitations found in 18 U.S.C. § 3282. The limitations period begins when a conspirator withdraws from a continuing conspiracy. See Hyde v. United States, 225 U.S. 347, 369 (1912). But it is not easy to withdraw from a criminal conspiracy. As Judge Henry Friendly explained in an oft-quoted passage:

> Mere cessation of activity is not enough to start the running of the statute;
> there must also be affirmative action, either the making of a clean breast

to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators.

United States v. Borelli, 336 F.2d 376, 388 (2d Cir. 1964) (citation omitted). In this case of first impression, Patricia Grimmett ended her participation in a marijuana distribution conspiracy and confessed her role to government investigators more than five years before she was indicted. However, the district court rejected her statute-of-limitations defense because she did not make a "clean breast" by disclosing all the details of her prior participation. Concluding that this application of Judge Friendly's quotable dicta is contrary to the purposes of the five-year statute of repose, we reverse.

## I. Background.

Grimmett's boyfriend, drug dealer Elmont Kerns, was murdered at his home on June 27, 1989. Over the next two weeks, homicide investigators conducted many interviews of the distraught Grimmett, who had lived with Kerns until just before the murder. Grimmett cooperated in the investigation and made the following admissions: (i) her belief that Kerns was a marijuana distributor, though he tried to protect her by not telling her the details of his drug activities; (ii) that she kept drug records for the nearly illiterate Kerns, but she only recorded what he told her to write and did not understand what she was writing because Kerns used codes; (iii) the identity of Kerns's drug "runners," who, she said, could decipher the codes; (iv) the identity of other Kerns associates, including Dennis Moore, who, she said, owed Kerns money and who was eventually convicted of arranging Kerns's murder; (v) that she and Kerns used cocaine together, and the identity of Kerns's cocaine suppliers; and (vi) the existence of secret compartments in Kerns's house, where investigators discovered marijuana and more than $300,000 in cash. Lieutenant Jerry Cassaday reported that Grimmett "stated that she would cooperate any way she could with the authorities." The murder investigation soon terminated with no charges being brought.

In 1992, federal agents investigated the drug activities of Dennis Moore, known to be one of Kerns's major marijuana customers.[1] They interviewed Grimmett after learning she had kept Kerns's drug records. Grimmett voluntarily attended two interviews, one at her home and a second at the agents' office where copies of the drug records were reviewed. For purposes of the "clean breast" issue raised on this appeal, the government emphasizes the following new disclosures Grimmett made during these 1992 interviews: (i) that she accompanied Kerns when he picked up money from his marijuana customers and helped Kerns count the money; (ii) that she cleaned up the records because Kerns could not keep them straight; (iii) that the word "sticks" in the records meant "Thai sticks," an imported illegal drug; and (iv) that she occasionally received cocaine being delivered to Kerns for their personal use.

Dennis Moore and alleged conspirators were first indicted on numerous charges on November 14, 1994. Grimmett was charged in one count with conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. Grimmett moved to dismiss the charge as time-barred by the five-year statute of limitations, alleging that she withdrew from the conspiracy in July 1989. After the district court denied that motion without an evidentiary hearing, Grimmett pleaded guilty to the charge, reserving the right to appeal the denial of her statute-of-limitations defense. Grimmett appealed, and we reversed, concluding the statute of limitations commences to run when a conspirator withdraws from an ongoing drug conspiracy, and remanding for further proceedings to determine whether Grimmett had, in fact, withdrawn in July 1989. United States v. Grimmett, 150 F.3d 958 (8th Cir. 1998).

On remand, after an evidentiary hearing, the district court again rejected Grimmett's statute-of-limitations defense. Noting that the dictionary defines "clean

---

[1]For a description of the criminal activities of Moore and his conspirators, including the murder of Kerns, see United States v. Moore, 149 F.3d 773, 777-78 (8th Cir. 1998).

breast" as a full disclosure, and the policy supporting a rigorous standard for withdrawal from a criminal conspiracy, the district court concluded that Grimmett's partial disclosures to the authorities in 1989 were not close enough to "a full and utter confession" to satisfy that rigorous standard. Grimmett again appeals. We review the statute-of-limitations issue *de novo*. See Grimmett, 150 F.3d at 961.[2]

## II. Discussion.

At the hearing on remand, Grimmett made a prima facie showing that she withdrew from the conspiracy in July 1989. Her role in the conspiracy was to keep the books for her boyfriend, Kerns. After Kerns was murdered, she was ostracized by other conspirators at his funeral. Though Grimmett had the burden to prove withdrawal, the government had the burden to come forward with evidence rebutting her prima facie showing. See United States v. Antar, 53 F.3d 568, 582 (3d Cir. 1995). The government presented no evidence that she participated in or shared in the fruits of the conspiracy after July 1989, more than five years prior to her indictment. The government's sole argument is that the additional details Grimmett disclosed to the drug investigators in 1992 demonstrate that she did not make a "clean breast" to the homicide investigators in July 1989. This contention requires us to take a closer look at the purposes underlying both the "clean breast" doctrine and the statute of limitations governing this criminal prosecution.

---

[2]Given the fact intensive nature of conspiracy withdrawal issues, there is always a question whether they should be resolved before or at trial. See FED. R. CRIM. P. 12(b); Grimmett, 150 F.3d at 963 (Loken, J., dissenting); United States v. Wilson, 26 F.3d 142, 159 (D.C. Cir. 1994); United States v. Shaw, 106 F. Supp. 2d 103, 123 (D. Mass. 2000); 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 193 (3d ed. 1999 & Supp. 2000). The government does not raise that procedural issue, and we decline to consider it.

Hyde established that the statute of limitations begins to run when a conspirator withdraws from a continuing conspiracy. But withdrawal requires affirmative action:

> Having joined in an unlawful scheme, . . . until [the conspirator] does some act to disavow or defeat the purpose he is in no situation to claim the delay of the law. As the offense has not been terminated or accomplished he is still offending.

225 U.S. at 369. As Judge Friendly recognized, a conspirator's confession -- the making of a "clean breast" -- qualifies as an affirmative act because it tends both to defeat the purposes of the ongoing conspiracy and to evidence the confessing conspirator's bona fide intent to withdraw. But the confession is not, by itself, enough to start the limitations period. The issue is still withdrawal, and even a full confession may be followed by conduct demonstrating the conspirator's continuing support of or acquiescence in the conspiracy. In that event, as the facts of Hyde make clear, the statute of limitations will *not* begin to run until the conspiracy runs its course.

In Hyde, conspirator Schneider argued that his conspiracy prosecution was time-barred because he had disclosed the conspiracy to the relevant government agency. The Supreme Court rejected this defense and affirmed the conviction because the trial court had properly submitted the withdrawal issue to the jury with this instruction:

> If [Schneider] had stood on his disclosure, you might have said: "Well, he is out of it from now on" -- but in connection with that you are to consider what he said afterwards. If you find that he closed his mouth and refused to say anything more about the matter and kept still in the interest of the others, you would have a right to say that that showed that he was still acquiescent in the matter. It would neutralize, if you choose to treat it so, the effect of his former declaration, that he did know, and was willing to disclose.

225 U.S. at 371.  See also United States v. United States Gypsum Co., 438 U.S. 422, 463-65 (1978).

Viewed from this perspective, we conclude that Grimmett's admissions to the homicide investigators immediately after Kerns's murder were affirmative acts confirming that she had "ceased to act in the role of a conspirator." Fiswick v. United States, 329 U.S. 211, 217 (1946).  She admitted her prior involvement as bookkeeper, providing information that was probably sufficient to indict, if not convict, her.  Cf. United States v. Carter, 721 F.2d 1514, 1532 (11th Cir. 1984).  She provided the investigators with sufficient facts to defeat the conspiracy (or at least as much of it as she knew), had the investigators vigorously pursued her leads.  Finally, she told the investigators she would cooperate in any way she could, and there is no evidence she failed to do so.  We agree with the government that she gave additional incriminating details to the federal investigators in 1992.  But that does not rebut Grimmett's evidence that she both withdrew from and acted affirmatively to defeat the conspiracy in July 1989, nor does the government argue that it evidences further participation in the conspiracy after her withdrawal.

We agree with the district court that public policy is served by a rigorous standard for withdrawal from a criminal conspiracy.  But the issue here is the commencement of the statute of limitations, not the admissibility of incriminating co-conspirator hearsay, the issue in United States v. Patel, 879 F.2d 292 (7th Cir. 1989), on which the district court relied.  The Supreme Court has emphasized that criminal statutes of limitations "are to be liberally interpreted in favor of repose." Toussie v. United States, 397 U.S. 112, 115 (1970) (citation omitted).  Viewed in that light, we do not believe that the "clean breast" phrase used by Judge Friendly in applying Hyde's withdrawal doctrine should be construed as requiring a "full confession" to commence the limitations period.  If the withdrawing conspirator severs all ties to the conspiracy and its fruits, *and* acts affirmatively to defeat the conspiracy by confessing to and

cooperating with the authorities, the continuing crime is complete as to that conspirator, and the limitations period begins to run.

Looking at all the circumstances in this case -- Grimmett's minor role, the decisive termination of that role when Kerns was murdered, the evidence other conspirators then wanted nothing to do with her, and her immediate, voluntary, incriminating disclosure to authorities of enough information about the conspiracy to permit its defeat -- we conclude Grimmett made a legally effective withdrawal in early July 1989. Accordingly, the district court erred in denying Grimmett's motion to dismiss the drug conspiracy charge as time-barred.

In the district court, Grimmett's drug conspiracy conviction was consolidated for sentencing purposes with her separate conviction for failure to appear at a bond revocation hearing. The consolidated Judgment in a Criminal Case dated December 1, 1997, is reversed. The case is remanded for dismissal of Grimmett's drug conspiracy indictment (Case No. 4:94CR00194-010) and for resentencing on her conviction for failure to appear (Case No. 97-00015-01-CR-W-4-9).

MURPHY, Circuit Judge, dissenting.

I respectfully dissent from the court's decision to reverse and dismiss Grimmett's conviction for conspiracy to distribute more than 1,000 kilograms of marijuana. Although given the opportunity by our earlier remand in this case, Grimmett did not satisfy her burden of showing that she had affirmatively disavowed the conspiracy five years prior to her indictment in order to bar prosecution on the basis of the statute of limitations.

The five year statute of limitations for conspiracy begins to run if a conspirator takes affirmative action that "properly and adequately terminates his or her involvement with the conspiracy." United States v. Antar, 53 F.3d 568, 582 (3d Cir. 1995). See

Hyde v. United States, 225 U.S. 347, 369 (1912). It is well established that the "[m]ere cessation" of illegal activities is not enough to protect a conspirator from legal liability. United States v. Maggard, 156 F.3d 843, 851 (8th Cir. 1998)  Rather, a defendant must "present evidence of some affirmative act of withdrawal on [her] part, typically either a full confession to the authorities or communication to [her] co-conspirators that [she] has abandoned the enterprise and its goals." Antar, 53 F.3d at 582 (emphasis omitted).  This is a "rigorous" standard, United States v. Borelli, 336 F.2d 376, 388 (2d Cir. 1964), and the defendant bears the burden of proving her withdrawal. See Maggard, 156 F.3d at 851.

We previously instructed that Grimmett could prevail on her motion to dismiss her indictment as time-barred only if she could show that she had "affirmatively disavowed the conspiracy more than five years before the indictment by making a clean breast to the authorities or by communicating her withdrawal in a manner reasonably calculated to reach coconspirators." United States v. Grimmett, 150 F.3d 958, 961 (8th Cir. 1998) (Grimmett I) (citations omitted).  Because Grimmett was indicted on November 14, 1994, she needed to show that she had withdrawn from the conspiracy before November 14, 1989, in order to be protected by the statute of limitations.  After an evidentiary hearing, the magistrate judge concluded that Grimmett had not met her burden of showing that she had affirmatively withdrawn from the conspiracy five years before her indictment.[3]

The magistrate judge found that Grimmett had not disclosed to law enforcement officials before November 14, 1989 the true extent of her participation in and

---

[3]In our earlier opinion we recognized that the issue of whether Grimmett had withdrawn from the conspiracy so that prosecution was barred might be subject to determination as a matter of law or might require resolution of fact issues by the court (or possibly even by a jury). See  Grimmett I, 150 F.3d at 962.  The parties indicated at oral argument that they both agreed to have the issue decided by the magistrate judge upon stipulated facts and the testimony of Grimmett's stepfather.

-8-

knowledge of the conspiracy. The court discussed the history of her various disclosures in its findings. The court also found that Grimmett had apparently attempted to skew the results of her July 6, 1989 polygraph test by taking a sedative prior to the test and that she had terminated an interview in 1992 and ceased cooperating after a detective began questioning her about her possible involvement in Kerns' murder. The magistrate judge cited several precedents holding that "a clean breast" requires a full and complete confession and concluded that because Grimmett had not made a complete confession to the authorities five years prior to her indictment, she had not made a timely withdrawal from the conspiracy.

In its discussion of some of Grimmett's communications with law enforcement officials, the court appears to recognize that she was not completely honest in June and July of 1989 about the extent of her participation in the conspiracy and that it was not until 1992 that she made additional disclosures. Only in 1992 did she disclose that she had always accompanied Kerns when he collected money from marijuana customers, that she had helped him count the proceeds from his drug business, and that she had received cocaine deliveries for their personal use. In direct contradiction of her earlier statements, Grimmett admitted in 1992 that she had an understanding of Kerns' method of recordkeeping, that she had helped Kerns with the books, and that she had understood that the word "sticks" in the records referred to the narcotic "Thai sticks."

Although the court depicts Grimmett's role in the conspiracy as minor, her 1992 disclosures indicate that Grimmett was actually quite involved in various aspects of the conspiracy. Grimmett revealed for the first time in 1992 that Kerns and a companion had gone to Chicago and "cleaned out" a man for not paying a large drug debt and that Kerns had gone to Colombia to negotiate a drug purchase and had been threatened by Colombians. Although the court States that Grimmett "told the investigators she would cooperate in any way she could, and there is no evidence she failed to do so," the undisputed facts in the parties' stipulation indicate that Grimmett stopped cooperating with law enforcement in 1992 after an interview in which she was questioned about her

own involvement in Kerns' murder. The facts do not support the conclusion that she cooperated "in any way she could."

Whether the information Grimmett had provided in 1989 gave prosecuting authorities sufficient evidence or incentive to indict her was for them to decide. That question is different from the one before the court, which is whether Grimmett met the test for withdrawal from the conspiracy by making "a *full* confession to the authorities." Antar, 53 F.3d at 582 (emphasis supplied), United States v. Steele, 685 F.2d 793, 803 (3d Cir. 1982). The stipulated record shows that Grimmett did not make a full confession in 1989 about her knowledge and role in the conspiracy. Her additional disclosures in 1992 related directly to her involvement and culpability in the conspiracy, and in some respects they contradicted what she had told authorities in 1989.

A conspirator should not be able to claim the benefits of the statute of limitations unless she has withdrawn and made a full and accurate disclosure. "As [the conspirator] has started evil forces, he must withdraw his support from them or incur the guilt of their continuance. Until he does withdraw there is conscious offending," and until the conspirator "does some act to disavow or defeat the purpose he is in no situation to claim the delay of the law." Hyde, 225 U.S. at 369-370. Otherwise a conspirator could escape the consequences of his or her criminal conduct by misleading authorities.

Based upon the stipulated record, the magistrate judge found that Grimmett had not withdrawn from the conspiracy. Because she lied to authorities about her knowledge of the drug records and her total role in the conspiracy and eventually ceased cooperating when they began to focus on her possible involvement in Kerns' murder, she has not shown that she disavowed or defeated the purpose of the conspiracy. Accordingly, she should not now be permitted to claim that her

-10-

prosecution is barred by the statute of limitations. Finding no error of fact or law in the decision of the district court, I would affirm its judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.