# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 07-3935

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Nebraska. |
| | * | |
| Lucas E. Demling, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: May 12, 2008
Filed: July 16, 2008

_____

Before RILEY, BOWMAN, and HANSEN, Circuit Judges.

_____

PER CURIAM.

Lucas E. Demling was convicted by a jury of one count of bank robbery in violation of 18 U.S.C. § 2113(a). The district court[1] sentenced him to 145 months in prison, three years of supervised release, and $40,000 in restitution. He filed a timely notice of appeal challenging the sufficiency of the evidence. We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## I.     Background

The TeamBank in Fort Calhoun, Nebraska, was robbed at approximately 10:40 A.M. on August 24, 2006. Two tellers were counting a delivery of $60,000 cash when a man wearing a hat and sunglasses entered the bank. He gave one of the tellers a bag, produced a knife, and demanded money. The teller complied, filling the bag as the man held the knife near her throat. The robber escaped with $40,000.

At trial, the Government called Sean Grant, who pled guilty as an accessory after the fact. As part of his plea agreement, he agreed to cooperate in the case against Demling. Grant testified that, on the morning of the robbery, he and Demling were working together at a construction site near the TeamBank. He testified that they left work early that morning and drove to the bank. They had previously discussed robbing a bank, and en route Demling purportedly indicated that he intended to do just that. Grant testified that he waited in an alley as Demling robbed the bank. Afterward, the two made a brief reappearance at work before returning to their hotel room to divide up the money. Later, Demling purportedly recounted to Grant the events that took place inside the bank.

The Government introduced still frames from TeamBank's digital surveillance camera showing that the robber had long bleached-blond hair. At trial, Demling's head was shaved, but Grant identified Demling as the robber in the stills. So, too, did Cody Crane, who worked with Demling and Grant at the construction site. Crane testified that Demling's hair had been long and blond at the time of the robbery. He also corroborated Grant's timeline of events on the morning of the robbery.

In addition to Grant and Crane, the Government introduced three other witnesses who were familiar with Demling and who positively identified him as the man in the stills. They were: Jody Cooper, a probation officer in McLean County, Illinois; Detective Joe Zoeller, of the McLean County Sheriff's Office; and Amy

McCollum, an acquaintance of Demling's. Cooper and Detective Zoeller had encountered Demling a number of times in the course of their professional duties, and both identified Demling from the stills. In addition, Cooper testified that Demling once alluded to out-of-state wrongdoing. McCollum both identified Demling from the stills and testified that she had twice heard Demling confess to the robbery. Demling's sole witness, his sister, testified that Demling had a tattoo on his ring finger at the time of the robbery. Demling points out that neither teller noticed a tattoo on the robber's finger.

An indictment of July 18, 2007, charged Demling with one count of bank robbery. See § 2113(a). A jury found Demling guilty, and he was sentenced to 145 months in prison, three years of supervised release, and $40,000 restitution. On appeal, Demling argues that the evidence is insufficient to support the verdict.

## II. Sufficiency of the Evidence

"This court reviews the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility determinations made in support of the jury's verdict." United States v. Aldaco, 477 F.3d 1008, 1020 (8th Cir. 2007) (internal marks omitted). "[W]e must uphold the verdict if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." United States v. Tucker, 169 F.3d 1115, 1116 (8th Cir. 1999) (internal marks omitted). Moreover, "[c]redible and substantial testimony by an accomplice is sufficient to support a conviction," United States v. Noe, 411 F.3d 878, 889 (8th Cir. 2005), cert. denied, 546 U.S. 1201 (2006), and "[i]n general, a girlfriend, relative, or other acquaintance is better equipped than a juror to determine if an image on a tape is, in fact, the image of the known person. This superior ability makes such a witness, if deemed credible, a valuable aid to the jury." United States v. Dobbs, 449 F.3d 904, 910 (8th Cir. 2006), cert. denied, 127 S. Ct. 1312 (2007).

Section 2113(a) defines bank robbery to include taking "by force and violence, or by intimidation . . . from the person or presence of another . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association." Given the lack of physical evidence, the primary issue is identity.

Demling argues that the evidence – including testimony identifying Demling as the man in the stills, testimony alleging Demling's confessions, and Grant's accomplice testimony – cannot permit a reasonable jury to conclude beyond a reasonable doubt that Demling was the robber. In support of this argument, he attacks the credibility and reliability of the Government witnesses' testimony. However, "this court cannot review the credibility of trial witnesses on appeal." United States v. McCarthy, 244 F.3d 998, 1001 (8th Cir. 2001). It is the jury's role to evaluate witness testimony, United States v. Buckley, 525 F.3d 629, 632 (8th Cir. 2008), and whether to believe Grant's accomplice testimony given pursuant to a plea agreement is just such an evaluation. United States v. Shepard, 462 F.3d 847, 867 (8th Cir.), cert. denied, 1275 S. Ct. 838 (2006). Ultimately, "[w]e are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill." Manson v. Brathwaite, 432 U.S. 98, 116 (1977).

Demling's other line of argument focuses on the tellers' testimony, urging that their testimony that they did not remember seeing a tattoo on the robber's finger is exculpatory. Yet Demling – while relying on the tellers' testimony in an attempt to undermine the verdict – cites research for the proposition that eyewitness testimony is categorically unreliable. If credited, that research undermines Demling's own argument. If it is not credited, the argument still fails, since "the evaluation of eyewitness testimony is for the jury alone." United States v. Oslund, 453 F.3d 1048, 1059 (8th Cir.) (internal marks omitted), cert. denied, 127 S. Ct. 750 (2006).

In sum, at least five witnesses familiar with Demling identified him as the man in the stills. McCollum and Grant both testified that they received a full confession from Demling, while Cooper testified that Demling gave her a partial one. Crane corroborated Grant's timeline of events, and Grant himself pled guilty to being an accessory after the fact. The evidence is sufficient to permit a reasonable jury to conclude beyond a reasonable doubt that Demling robbed the bank.

Accordingly, we affirm the judgment of the district court.

———————————————