# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1312
_____

United States of America,

        Appellee,

  v.

Cristye Easton, also known as
Cristye Freeland,

        Appellant.

_____

No. 02-1315
_____

United States of America,

        Appellee,

  v.

Paul Shannon Easton,

        Appellant.

_____

*
*
*
*
*
*
*
*
*
*
*

Appeals from the United States
District Court for the District of
South Dakota.

[UNPUBLISHED]

*
*
*
*
*
*
*
*
*
*

Submitted:  December 10, 2002

Filed:   December 16, 2002 (corrected 1/22/03)

_____

_____

Before McMILLIAN, FAGG, and BYE, Circuit Judges.

_____

PER CURIAM.

Cristye Easton (Cristye) and Paul Shannon Easton (Paul), who are married, appeal their convictions for mail fraud and conspiracy to commit mail fraud. See 18 U.S.C. § 371 (2000) (conspiracy); 18 U.S.C. § 1346 (2000) (mail fraud). Having reviewed the Eastons' claims, we affirm their convictions.

Paul and another Gateway, Inc. (Gateway) employee believed Gateway would do business with the apparently women-owned vendor the two men created with their wives to resell packing supplies to Gateway. The couples knew Gateway did not do business with its employees, so the partnership, C&L Enterprises, Inc. (C&L), was established in the wives' maiden names. Cristye provided the partnership agreement and represented the company in its dealings with an accountant and a lawyer. Because C&L was required to prepay its vendor, Paul and his coworker falsely claimed shipments had been received from C&L, and Gateway issued payment to C&L. C&L then paid its vendor, and the prepaid materials were shipped to C&L and delivered to Gateway. C&L profited approximately $220,000 from its sales to Gateway.

After a jury convicted Paul and Cristye of mail fraud and conspiracy to commit mail fraud, the district court[*] sentenced Paul to fifteen months in prison and Cristye to three years probation. The two couples are also jointly and severally liable for $150,000 restitution. Because Cristye and Paul raise many of the same issues before

---

[*]The Honorable John Bailey Jones, United States District Court Judge for the District of South Dakota.

our court, we have consolidated their appeals and we review their claims together when appropriate.

First, Cristye challenges the sufficiency of the evidence supporting her convictions. We will overturn the jury verdict only if no reasonable jury could have concluded Cristye was guilty beyond a reasonable doubt on each element of the charges. United States v. Hernandez, 299 F.3d 984, 988 (8th Cir. 2002) (standard of review). Contrary to Cristye's assertion, the government is not required to prove Gateway lost money or Cristye wanted Gateway to lose money in order to establish Cristye's intent to defraud. United States v. Pennington, 168 F.3d 1060, 1065 (8th Cir. 1999); United States v. Costanzo, 4 F.3d 658, 664 (8th Cir. 1993). We conclude a reasonable jury, after assessing the credibility of the witnesses and evaluating the evidence, could have found Cristye guilty beyond a reasonable doubt of all elements of mail fraud and conspiracy to commit mail fraud.

Second, Cristye and Paul contend the district court failed properly to explain fraudulent intent in the jury instructions. United States v. Whitehead, 176 F.3d 1030, 1037 (8th Cir. 1999) (standard of review). Jury instruction 25 stated in part:

> The crime of mail fraud . . . has four essential elements, which are:
> 1. The defendant under consideration voluntarily and intentionally devised or participated in a scheme to obtain money or property rights of another or to defraud another out of the intangible right to honest services by means of material false representations or promises . . . .
> 2. The defendant under consideration did so with the intent to defraud;
> 3. It was reasonably foreseeable that the mail would be used; and
> 4. The mail was used in furtherance of some essential step in the scheme.

Defining the elements of mail fraud, jury instruction 26 read:

> To deprive a corporation of "honest services" as that term is used in this case, the defendant under consideration must cause or intend to cause actual harm or injury which is in most business contexts financial or economic harm.

After the jury asked, "Does it matter whether or not Gateway lost money in this deal?" the court gave the jury the following supplemental instruction:

> Evidence of actual harm to Gateway can be considered in determining whether the defendants intended to defraud Gateway, as set out in Instruction Number 25. If you find that Gateway did not actually lose money as a result of the alleged scheme, this may also be considered in determining whether the defendants intended to defraud Gateway, as set out in Instruction Number 25.

Contrary to the Eastons' view, financial or economic harm is not necessary to establish intent to defraud. See id. at 1037-38. As in this case, the scheme itself often serves as evidence of a defendant's intent to defraud. Id. at 1038; Pennington, 168 F.3d at 1065. Jury instructions 25 and 26, and the supplemental instruction, are consistent with the law of this circuit.

Third, the Eastons claim the district court committed reversible error when it instructed the jury on a single conspiracy and refused to instruct on multiple conspiracies. United States v. Contreras, 283 F.3d 914, 916 (8th Cir. 2002) (standard of review). Jury instruction 23 stated:

> You may consider acts knowingly done and statements knowingly made by a defendant's co-conspirators during the existence of the conspiracy and in furtherance of it as evidence pertaining to the defendant even though they were done or made in the absence of and without the knowledge of the defendant. This includes acts done or statements made before the defendant had joined the conspiracy, for a person who knowingly, voluntarily, and intentionally joins an existing conspiracy is responsible for all of the conduct of the co-conspirators from the beginning of the conspiracy.

Shortly before C&L was formed, Paul's coworker and his wife created and operated a company nearly identical to C&L in its structure, purpose, and methods. The government argued the Eastons entered into an already-existing conspiracy, but the Eastons contended the creation of C&L was a separate conspiracy. Having considered the evidence in the light most favorable to the verdict, we conclude the evidence supports a single conspiracy, thus the district court's refusal to give a multiple conspiracy instruction is not reversible error. Id.

Finally, Paul argues his conviction under the mail fraud statute is plain error because the statute is unconstitutionally vague as applied to his case. Specifically, Paul contends an ordinary person would not understand C&L's conduct was prohibited by the statute. See United States v. Olano, 507 U.S. 725, 732 (1993) (plain error standard). The Second Circuit distinguished the case on which Paul relies, United States v. Handakas, 286 F.3d 92, 107 (2d Cir. 2002), in a situation factually similar to Paul's, United States v. Rybicki, 287 F.3d 257, 264 (2d Cir. 2002). In the context of Paul's plain error argument, we reject the contention that the mail fraud statute is unconstitutionally vague when applied to a case in which two Gateway employees and their wives created a false-front vendor with the intent to deceive Gateway about the vendor's ownership, to profit from doing business with Gateway, and to use the mail to carry out this scheme. See, e.g., Pennington, 168 F.3d at 1065-66 (CEO's kickback scheme); Costanzo, 4 F.3d at 660, 664-67 (plan to obtain discounted pharmaceuticals by making false claims and to resell at a profit).

For the reasons stated above, we affirm the convictions of Cristye Easton and Paul Shannon Easton.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.