# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1621

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Jose Lazaro Contreras, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  December 12, 2001

Filed:  March 13, 2002

_____

Before HANSEN,[1] Chief Judge, McMILLIAN and HEANEY, Circuit Judges.

_____

HEANEY, Circuit Judge.

On September 26, 2000, a jury found Jose Lazaro Contreras guilty of Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  On appeal, Contreras asks us to consider, among other things, whether the district court improperly refused defendant's request for a multiple

_____

[1]The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

conspiracy instruction. We find that there was sufficient evidence before the jury to conclude that Contreras had participated in a single conspiracy, eliminating the need for a multiple jury instruction. We have carefully considered the other issues raised by the appellant: 1) the admission of alleged hearsay statements at trial; 2) the jury instruction purported to be contrary to Apprendi principles; 3) an excessive drug quantity finding; and 4) the application of sentencing enhancements for possession of a dangerous weapon and role in the offense, and find them to be without merit.

I. Background

The record provides a detailed description of Contreras's methamphetamine manufacturing enterprise. He and his co-conspirators Hernan Contreras, Miguel Contreras, Noe Contreras, Adam Avila, and Robert Vidaca, obtained, from several sources, ephedrine, pseudo-ephedrine, red phosphorus, iodine, and lab equipment for the purpose of producing methamphetamine. The ephedrine they used was in the pill or tablet form, which members of the conspiracy "reduced" to remove impurities. They leased houses under fictitious names or the name of someone not otherwise involved in the conspiracy, and hired cooks to manufacture the methamphetamine. Contreras minimized his exposure to criminal prosecution by maintaining as little contact as possible with the cooks. Once the manufacturing process was complete, Contreras and his co-conspirators would sell or front the methamphetamine to other co-conspirators or people outside the conspiracy.

From 1993 to 1996, Contreras worked with Frank Cikovich in the manufacture and distribution of methamphetamine. Cikovich supplied Contreras with unextracted cases of ephedrine, and distributed the drug to other states, including South Dakota. Contreras gave Cikovich methamphetamine in exchange for ephedrine tablets, or sold the methamphetamine he produced. The record indicates that Contreras knew Cikovich had methamphetamine buyers outside of California, and that the drug was transported out of state.

After Cikovich's arrest in 1996, Contreras continued to manufacture methamphetamine in several residences with his co-conspirators. Cikovich agreed to cooperate with the government in return for a significantly reduced sentence. His testimony led to Contreras's arrest.

II.    Discussion

Contreras argues that there were two distinct conspiracies, the first between Frank Cikovich and Cheri Knowles in South Dakota, and the second involving Contreras and his co-conspirators in California. The government contends that there was one conspiracy - Contreras operated his methamphetamine production before, during, and after his collaboration with Cikovich, and relied on other sources of supply for ephedrine after Cikovich's arrest. We find the evidence supports the district court's determination that a multiple conspiracy instruction was unnecessary in light of Contreras's unchanging role in his production of methamphetamine for distribution until his arrest.

Whether there was sufficient evidence to sustain a multiple conspiracy instruction is a question of law and is reviewed de novo. United States v. Hall, 171 F.3d 1133, 1149 (8th Cir. 1999). Whether the government has proven a single conspiracy or a multiple conspiracy is a question of fact and is reviewed for clear error. See United States v. England, 966 F.2d 403, 406 (8th Cir. 1992).

In determining whether a single or multiple conspiracy existed, this court reviews the evidence in the light most favorable to the jury's verdict. United States v. Cabbell, 35 F.3d 1255, 1262 (8th Cir. 1994). "If the evidence supports a single conspiracy, the failure to give a multiple conspiracy instruction is not reversible error." United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1999) (citing Cabbell, 35 F.3d at 1262). "A multiple conspiracy instruction is not required just because there are a number of sources and independent dealers if there was a shared objective 'to

sell large quantities of drugs.'" Id. (quoting Cabbell, 35 F.3d at 1262). "A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." Id.

Contreras unconvincingly asserts that there were at least two separate conspiracies: the first between Cikovich and Cheri Knowles to commit the crime of conspiracy to manufacture and distribute in South Dakota, and the second between appellant and his co-conspirators to commit the crime of conspiracy to manufacture and distribute methamphetamine in California. In response, the government produced evidence to show that Contreras conspired with Cikovich to manufacture and distribute methamphetamine in California to be sold in South Dakota, thus linking him to the same conspiracy as Cikovich and Knowles. The government also demonstrated that although Cikovich and Knowles were no longer a part of the conspiracy after their arrest in 1996, ceasing Contreras's distribution of his drugs in South Dakota, Contreras continued to produce methamphetamine with the same people who assisted him in his manufacture of the drug in California. We agree with the government that Contreras's role remained the same throughout the period of the conspiracy. Contreras knew at all times that he was manufacturing methamphetamine to be sold by someone, whether in or outside of California. As in United States v. Jones, "the evidence here established . . . a single conspiracy to move large quantities of drugs from source cities to numerous distribution points throughout the United States." 160 F.3d 473, 482 (8th Cir. 1998).

III.    Conclusion

We conclude that Contreras participated in a single conspiracy to manufacture and distribute methamphetamine in California and South Dakota. His role in the conspiracy remained the same before, during, and after his alliance with Cikovich: he found suppliers for ephedrine and relied on others to distribute the drug for sales outside of California throughout his involvement with the manufacture of the drug. We therefore hold that the district court properly refused the multiple conspiracy instruction, and we affirm on all counts.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.