**UNITED STATES of America,**
**Plaintiff,**

v.

**Angela JOHNSON, Defendant.**

**No. CR 00–3034–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Dec. 31, 2002.

898

Alfred E. Willett, Terpstra, Epping & Willett, Cedar Rapids, IA, Dean A. Stowers, Rosenberg, Stowers & Morse, Robert R. Rigg, Drake University Legal Clinic, Des Moines, IA, Patrick J. Berrigan, Watson & Dameron, LLP, Kansas City, MO, for Angela Johnson.

Patrick J. Reinert, Charles J. Williams, U.S. Attorney's Office, Cedar Rapids, IA, for U.S.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTIONS TO DISMISS COUNTS 1 THROUGH 5 AND 7 PURSUANT TO 18 U.S.C. § 3282 DUE TO THE STATUTE OF LIMITATIONS ON NON–CAPITAL CRIMES AND TO DISMISS COUNT 7 DUE TO DUPLICITY**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. BACKGROUND ................................................................ 900

II. LEGAL ANALYSIS ........................................................... 901
 A. The Challenge To Counts 1 Through 5 ................................. 901
 1. Arguments of the parties ......................................... 901
 2. Applicable law ................................................... 902
 a. Statutory provisions ......................................... 902
 b. Eighth Circuit precedent ..................................... 903
 3. Application of the law ........................................... 904
 B. The Challenges To Count 7 .......................................... 905
 1. Arguments of the parties ......................................... 905
 2. Applicable law ................................................... 906
 a. Timeliness of conspiracy indictments ......................... 906
 b. Duplicitous conspiracy indictments ........................... 909
 c. Single or multiple conspiracies .............................. 910
 3. Application of the law ........................................... 912
 a. The count in question ........................................ 912
 b. Identity, duplicity, and timeliness on the face of the
 indictment ................................................... 913
 c. Identity, duplicity, and timeliness as questions of proof ..... 914
 i. Identity or duplicity? ..................................... 915
 ii. Timeliness .............................................. 916
 d. Prejudice .................................................... 917

III. CONCLUSION .............................................................. 917

### I. BACKGROUND

In two separate indictments, a grand jury charges defendant Angela Johnson with a variety of charges arising, principally, from her alleged involvement in the murders of five witnesses. The grand jury handed down the first seven-count indictment on July 26, 2000, and the second ten-count indictment on August 30, 2001. On April 25, 2002, the government filed notices in both cases of its intent to seek the death penalty on all of the charges relating to the murder of witnesses. On June 24, 2002, Johnson filed motions in the first case against her to dismiss Counts 1 through 5 and 7 pursuant to 18 U.S.C. § 3282 due to the statute of limitations on non-capital crimes (docket no. 328) and to

dismiss Count 7 due to duplicity (docket no. 326). Those motions are now before the court.

While Johnson's motions were pending, on August 23, 2002, the government filed superseding indictments in both cases against Johnson. The superseding indictment in this case involves essentially the same seven counts as the original indictment, which are the following: five counts of aiding and abetting the murder of witnesses, in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (C), 1512(a)(2)(A) or 1513(a)(1)(A) and (C),[1] 1111, and 2; one count of aiding and abetting the solicitation of the murder of witnesses, in violation of 18 U.S.C. §§ 373(a)(1) and 2; and one count of conspiracy to interfere with

---

1. The court notes that there is no subdivision (C) to 18 U.S.C. § 1513(a)(1), nor does it appear that there ever has been. *See* 18 U.S.C.A. § 1513(a) & Historical and Statutory Notes. Notwithstanding this fact, Count 1 of the Superseding Indictment in this case,

which alleges that Johnson aided and abetted the killing of Gregory Nicholson, alleges that the killing was, *inter alia*, "in violation of Title 18, United States Code, Sections ... 1513(a)(1)(A) & (C)...." Superseding Indictment, Count 1.

witnesses, in violation of 18 U.S.C. § 371. The August 23, 2002, superseding indictment in the companion case, Case No. CR 01–3046–MWB, charges Johnson with five counts of killing witnesses while engaging in a drug-trafficking conspiracy ("conspiracy murder"), in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; and five counts of killing the same witnesses in furtherance of a continuing criminal enterprise ("CCE murder"), in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. The five murder victims identified in the second indictment are the same five murder victims identified in Counts 1 through 5 of the first indictment.

On September 24, 2002, the government filed a notice in this case withdrawing its notice of intent to seek the death penalty for violations of the witness-tampering statute, 18 U.S.C. § 1512. However, the government reiterated its intention to continue pursuing the death penalty in the companion case, Case No. CR 01–3046–MWB, as to the "conspiracy murder" and "CCE murder" charges.

Trial on both indictments is currently scheduled to begin on March 10, 2003, although the defendant's December 11, 2002, motion for a continuance of the trial is also pending before the court.

## II. LEGAL ANALYSIS

The court will begin its legal analysis with Johnson's "statute of limitations" challenge to Counts 1 through 5, which involves, primarily, an issue of statutory interpretation. The court will then turn to Johnson's intertwined "statute of limitations" and "duplicity" challenges to Count 7, which both depend upon Johnson's assertion that Count 7 charges multiple conspiracies—some of which are time-barred—not a single conspiracy.

### A. The Challenge To Counts 1 Through 5

#### 1. Arguments of the parties

In support of her motion to dismiss the charges of murder in violation of the witness-tampering statute 18 U.S.C. § 1512(a) in Counts 1 through 5, Johnson contends that the applicable statute of limitations is 18 U.S.C. § 3282, which sets a five-year statute of limitations, not 18 U.S.C. § 3281, which provides that "[a]n indictment for any offense punishable by death may be found at any time without limitation." This is so, she contends, notwithstanding that the federal death penalty applies to the § 1512(a) offenses with which she is charged, because, at the time that she allegedly committed those offenses, in July and November of 1993, the federal death penalty had been declared unconstitutional. It was not until later, in 1994, that Congress rectified this infirmity by passing the present Federal Death Penalty Act (FDPA). Under these circumstances, Johnson argues that the § 1512(a) offenses with which she is charged should be classified as non-capital offenses, subject to a five-year statute of limitations under § 3282. Consequently, the § 1512(a) charges in the July 26, 2000, indictment, alleging murders almost seven years earlier, in July and November of 1993, are untimely. Johnson acknowledges that her argument is contrary to Eighth Circuit precedent. However, she explains, she is raising the issue to preserve it for future review in the event that such review becomes necessary.

In further support of her argument, Johnson contends that, if Congress had intended § 3281 to apply while death penalty provisions relevant to § 1512(a) were considered unconstitutional, Congress could have written the statute in a manner to indicate that clearly. As a matter of statutory interpretation, Johnson contends

that application of § 3281 to offenses that do not fall within a *constitutionally effective* death penalty fails to give effect to the statute's language regarding offenses "punishable by death." Finally, she argues that the rule of lenity should apply to give her the benefit of the more favorable interpretation of § 3281.

In response, the government, not surprisingly, asserts that Johnson's argument is contrary to Eighth Circuit precedent that Johnson herself identified as standing against her. The government asserts that even Johnson must realize that she cannot win her argument on the merits in light of the Eighth Circuit decisions cited by both parties.

### 2. *Applicable law*

#### a. *Statutory provisions*

The present version of the witness-tampering statute, 18 U.S.C. § 1512(a), in pertinent part, states the following:

**§ 1512. Tampering with a witness, victim, or an informant**

(a)(1) Whoever kills or attempts to kill another person, with intent to—

(A) prevent the attendance or testimony of any person in an official proceeding;

\*　　\*　　\*　　\*　　\*　　\*

(C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (2).

(2) The punishment for an offense under this subsection is—

(A) in the case of murder (as defined in section 1111), the death penalty or imprisonment for life, and in the case of any other killing, the punishment provided in section 1112[.]

18 U.S.C. § 1512(a). Thus, as it presently stands, § 1512(a) provides, at least on its face, that if a "killing" in violation of § 1512(a)(1) is a "murder," as elsewhere defined, such a violation of the statute is punishable by death pursuant to § 1512(a)(2)(A).

However, the present language of § 1512(a)(2)(A) is the result of an amendment in 1994. *See* Pub.L. 103–322, § 60018. Prior to that amendment—*e.g.*, at the time of the alleged killings at issue in Counts 1 through 5 of the Superseding Indictment in this case—subparagraph (A) read as follows: "in the case of a killing, the punishment provided in sections 1111 and 1112 of this title." *See* 18 U.S.C. § 1512(a)(2)(A) (1993). Similarly, prior to amendment in 1994, 18 U.S.C. § 1111 defined "murder," distinguished between "murder in the first degree" and "murder in the second degree," *see* 18 U.S.C. § 1111(a) (1993), and specified that whoever was guilty of murder *in the first degree* "shall suffer death unless the jury qualifies its verdict by adding thereto 'without capital punishment', in which event he shall be sentenced to imprisonment for life," and whoever was guilty of murder *in the second degree* "shall be imprisoned for any term of years or for life." 18 U.S.C. § 1111(b) (1993). Thus, at the time of the murders alleged in Counts 1 through 5 of the Superseding Indictment, a killing under § 1512(a)(1) meeting the definition of murder *in the first degree* under § 1111 was punishable by death, but such a killing meeting only the definition of murder *in the second degree* was *not* punishable by death. *See* 18 U.S.C. §§ 1512(a)(2) & 1111 (1993); *see also United States v. Emery*, 186 F.3d 921, 924 (8th Cir.1999) (noting

that, at the time of the offenses at issue in that case, 1990, § 1512 offenses involving first-degree murder were punishable by death), *cert. denied,* 528 U.S. 1130, 120 S.Ct. 968, 145 L.Ed.2d 839 (2000). By way of contrast, under § 1512(a)(2), as it now exists, murder of either degree, as defined by § 1111, is punishable by death. *See* 18 U.S.C. § 1512(a)(2) (2002); *see also* H. Rep. No. 103–466, Death Penalty for Certain Crimes (Mar. 25, 1994) ("Section 3(i) amends section 1512 of title 18 of the United States Code to authorize the death penalty for the intentional killing of a Federal witness," whereas other provisions were amended to specify the death penalty for "first-degree murder," such as Section 3(j), which amended 18 U.S.C. § 1503 "to increase the penalties for influencing or injuring court officers or jurors, including authorizing the death penalty for first-degree murder").

The statute of limitations provisions applicable, or potentially applicable, to the § 1512(a) offenses in this case are, in turn, the following:

### § 3281. Capital offenses

An indictment for any offense punishable by death may be found at any time without limitation.

### § 3282. Offenses not capital

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. §§ 3281 & 3282. Thus, whether the "unlimited" statute of limitations of § 3281 or the five-year statute of limitations of § 3282 applies depends, on the face of the statutes, on whether or not the offense is "punishable by death," *see* 18 U.S.C. § 3281, or is instead "not capital." *See* 18 U.S.C. § 3282.

### b. Eighth Circuit precedent

The government asserts, and Johnson acknowledges, that two decisions of the Eighth Circuit Court of Appeals are contrary to Johnson's contentions here. The first of those decisions is *United States v. Edwards,* 159 F.3d 1117 (8th Cir.1998), *cert. denied,* 528 U.S. 825, 120 S.Ct. 309, 310, 145 L.Ed.2d 64 (1999), which involved a statute of limitations challenge similar to Johnson's in a case involving prosecution of the defendants for arson pursuant to 18 U.S.C. § 844(i) for a fire in which six firefighters were killed. *Edwards,* 159 F.3d at 1121–22. The court's disposition of the statute of limitations issue, in its entirety, consisted of the following:

The federal statute of limitations for non-capital crimes is five years. *See* 18 U.S.C. § 3282. The arson occurred in 1988, more than seven years prior to defendants' indictments. There is no limitations period for a capital offense, defined as "any offense punishable by death." 18 U.S.C. § 3281. The arson statute provides that whoever commits arson resulting in death "shall also be subject to ... the death penalty ... as provided in section 34 of this title." 18 U.S.C. § 844(i). Defendants argue their prosecutions are time-barred because the death penalty procedures in 18 U.S.C. § 34 were unconstitutional under *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), until amended in 1994, and therefore defendants could not have been subjected to the death penalty for their 1988 crimes. This argument was rejected in *United States v. Manning,* 56 F.3d 1188, 1196 (9th Cir.1995), where the court reasoned that § 3281 "derive[s its] justification from the serious nature of the crime rather than from a concern about, for example, what procedural protections

those who face a penalty as grave as death are to receive." We agree with and follow the *Manning* decision.

*Edwards,* 159 F.3d at 1128.

A similarly short, but equally pithy discussion involving charges pursuant to the same witness-tampering statute at issue here appears in *United States v. Emery,* 186 F.3d 921 (8th Cir.1999). In *Emery,* the defendant asserted that his prosecution for killing a federal informant in violation of 18 U.S.C. § 1512(a)(1)(C) was time-barred, but the court again rejected that argument, as follows:

> Mr. Emery contends that the indictment under which he was tried was barred by the statute of limitations. Although it is true that a five-year statute of limitations applies to non-capital federal crimes unless some other statute specifically provides otherwise, *see* 18 U.S.C. § 3282, no such limitation applies to capital crimes, *see* 18 U.S.C. § 3281. Mr. Emery argues, however, that when 18 U.S.C. § 1512 was enacted in 1986, capital punishment had been prohibited by *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (*per curiam*). Congress could not therefore have intended, the argument goes, for killing a federal witness to be a capital crime exempt from the five-year statute of limitations. There are a number of infirmities with this argument, but we believe that it suffices to observe that a plain reading of the statutory language dictates a different result. The penalty section of § 1512, as it existed in 1990 (the time of the crime), *see* § 1512(a)(2)(A), explicitly incorporated the sentencing provisions of 18 U.S.C. § 1111, which has always permitted the death penalty to be a punishment for first-degree murder. The indictment and the verdict director form in this case included all of the elements of first-

degree murder, and the jury found that the prosecution proved these elements beyond a reasonable doubt. The crime Mr. Emery was indicted and convicted for was therefore a capital crime, to which no statute of limitations applies.

*Emery,* 186 F.3d at 924.

### 3. *Application of the law*

▇ There can be little doubt that Johnson's statute of limitations arguments as to Counts 1 through 5 of the Superseding Indictment are foreclosed by *Edwards* and *Emery.* First, *Edwards* justifies rejection of Johnson's argument that an *effective* death penalty is required before an offense that, on its face, authorizes the death penalty can be one that defines an offense "punishable by death" within the meaning of 18 U.S.C. § 3281. Rather, as explained in *Edwards,* the Eighth Circuit Court of Appeals rejects the contention that the applicable statute of limitations depends on whether the defendant actually could have been subjected to the death penalty at the time that he or she committed the nominally "capital" crime. *Edwards,* 159 F.3d at 1128. This is so, the court concluded in *Edwards,* because the justification for the "unlimited" statute of limitations in 18 U.S.C. § 3281 for crimes punishable by death is " 'the serious nature of the crime rather than ... a concern about, for example, what procedural protections those who face a penalty as grave as death are to receive.' " *Id.* (quoting and adopting this language from *Manning,* 56 F.3d at 1196).

Moreover, *Emery* rejects Johnson's contention that Congress could not have intended for murdering a federal witness in violation of § 1512(a)(1) to be a capital crime exempt from the five-year statute of limitations in 18 U.S.C. § 3282, if capital punishment was prohibited at the time of the offense by fiat of the United States Supreme Court. *Emery,* 186 F.3d at 924. This is so, the court concluded in *Emery,*

because at the time of the offenses at issue in that case, § 1512(a)(2)(A) explicitly incorporated the death penalty as a punishment for first-degree murder, so long as the indictment included all of the elements of first-degree murder. *Id.* The same statutory scheme applies to the murders of witnesses charged here as applied to the § 1512(a)(1) offense in *Emery.* Moreover, Counts 1 through 5 of the Superseding Indictment each charge the elements of first-degree murder—specifically, that each killing was willful, deliberate, malicious, with premeditation and malice aforethought. *See* Superseding Indictment, Counts 1 through 5, *and compare* 18 U.S.C. § 1111 (1988) (defining "murder" as requiring unlawful killing of a human being with malice aforethought, and defining "murder in the first degree," *inter alia,* as "murder perpetrated by . . . any other kind of willful, deliberate, malicious, and premeditated killing").

Consequently, the result here is the same as it was in *Edwards* and *Emery:* Johnson has been charged in Counts 1 through 5 with murders that are "punishable by death," whether or not a *constitutionally effective* death penalty was available, on procedural grounds, at the time that she allegedly committed the offenses. *See Emery,* 186 F.3d at 924. Johnson's motion to dismiss Counts 1 through 5 on statute of limitations grounds will, therefore, be denied.

### B. The Challenges To Count 7

Johnson also asserts that Count 7 must be dismissed on "statute of limitations" grounds, but in addition, she argues that this Count must also be dismissed on the ground of "duplicity." As mentioned above, both of these grounds depend upon Johnson's contention that Count 7 charges multiple conspiracies, not just one. The court, therefore, turns next to Johnson's interrelated challenges to Count 7.

### 1. Arguments of the parties

As to Count 7, Johnson again argues that the applicable statute of limitations provision is the five-year statute of limitations under § 3282, but that this Count is time-barred under that provision. Johnson argues that Count 7 actually charges several different conspiracies, one or more of which actually ended with the murder of the witnesses in 1993, with one or more separate conspiracies pertaining to subsequent solicitation of murders of witnesses related to drug activity in 1996. She contends that Count 7 must be dismissed in its entirety, because portions of the conspiracy count charging conspiracies that terminated with the murders in 1993 are untimely. Her "duplicity" argument is, likewise, that Count 7 charges multiple conspiracies, not just one, and as such, the government has improperly joined in a single count two or more distinct and separate offenses. She contends, moreover, that no reasonable jury could find that all of the conspiracies existed within the statute of limitations period, and that it is virtually impossible for the court to structure the jury instructions effectively to avoid prejudice to her.

The government's response is, in essence, that Count 7 charges a single conspiracy involving multiple overt acts, some of which fall within the five-year limitations period. The single conspiracy, according to the government, involved tampering with witnesses to allow Johnson and her associate, Dustin Honken, to avoid the consequences of their criminal conduct, particularly, manufacturing methamphetamine. This is so, the government argues, even if the personnel of the conspiracy changed and even if the conspiracy involved a series of crimes, including murders. The government also argues that, even if there is some validity to Johnson's

arguments, the proper remedy is for the court to instruct the jury to determine whether there was only a single conspiracy or several conspiracies.

These arguments are developed further in the government's resistance to Johnson's motion to dismiss Count 7 on "duplicity" grounds. The government contends that the indictment charges that the conspiracy had multiple objectives, that is, it involved an agreement to commit multiple offenses over a period of years, all with the goal of obstructing justice and preventing law enforcement officers from prosecuting Dustin Honken or others. Moreover, the government argues that the fact that several substantive offenses were committed pursuant to the illegal agreement did not terminate the agreement or somehow fragment the conspiracy into multiple agreements. Indeed, the government contends, even acts simply to conceal earlier substantive crimes of the conspiracy may continue the time period of the conspiracy. The government also contends that a defendant must effectively withdraw and disavow a conspiracy to be relieved of responsibility for the entire series of crimes committed pursuant to the conspiracy. Finally, the government contends that any issue of whether Count 7 charges one or several conspiracies can be resolved by the jury upon proper instructions from the court.

In her reply in support of her motion to dismiss Count 7 for duplicity, Johnson disputes each of the government's main contentions. First, she contends that, for strategic reasons—specifically, to try to make the charge regarding the earlier conspiracies to murder witnesses in 1993 timely—the government has contrived a broad and vague agreement that purportedly includes overt acts committed within the five-year limitations period. However, Johnson contends that the government has

but poorly explained the logic that binds the various separate agreements into a single conspiracy. Second, Johnson contends that the Supreme Court and the Eighth Circuit Court of Appeals have rejected the contention that acts to conceal earlier substantive crimes continue the time period of the conspiracy. Next, Johnson contends that the government has the burden to prove that she did not withdraw from a single, continuing conspiracy. Finally, Johnson contends that the problem of duplicity here cannot be solved simply with appropriate limiting instructions. Therefore, Johnson contends, inclusion of time-barred overt acts may prejudice the jury's ability to render a fair and correct verdict in this case.

### 2. *Applicable law*

#### a. *Timeliness of conspiracy indictments*

 The parties agree, and the Eighth Circuit Court of Appeals has held, that the statute of limitations applicable to a conspiracy charge like the one at issue here is the five-year statute of limitations of 18 U.S.C. § 3282. *See United States v. Perry*, 152 F.3d 900, 904 (8th Cir.1998), *cert. denied*, 525 U.S. 1168, 119 S.Ct. 1088, 143 L.Ed.2d 89 (1999); *United States v. Dolan*, 120 F.3d 856, 864 (8th Cir.1997). However, the question is, had the five-year limitations period run on the conspiracy charge in Count 7 by the time that Johnson was indicted on July 26, 2000? In answering that question, the court must keep in mind that, as a general rule, "[t]he Supreme Court has emphasized that criminal statutes of limitations 'are to be liberally interpreted in favor of repose.'" *United States v. Grimmett*, 236 F.3d 452, 456 (8th Cir.2001) (quoting *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)); *Dolan*, 120 F.3d at 864 ("Statutes of limitations in criminal

cases 'are to be liberally interpreted in favor of repose.'") (quoting *United States v. Marion,* 404 U.S. 307, 322 n. 14, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

■ "When a defendant is charged with conspiracy, as here, the limitations period commences 'from the occurrence of the last overt act committed in furtherance of the conspiracy.'" *Perry,* 152 F.3d at 904 (quoting *Dolan,* 120 F.3d at 864). Therefore, where, as here, the defendant challenges the timeliness of the conspiracy charge on the face of the indictment, "[t]he government, to prevent the indictment from being found defective on its face, '*must allege* and prove the commission of at least one overt act by one of the conspirators within [the five-year] period in furtherance of the conspiratorial agreement.'" *Dolan,* 120 F.3d at 864 (quoting *United States v. Davis,* 533 F.2d 921, 926 (5th Cir.1976)) (emphasis added). In this case, that means that the indictment must state at least one overt act by one of the conspirators in furtherance of the conspiracy that occurred on or after July 26, 1995, five years prior to the original indictment in this case. *See id.* On the other hand, where the timeliness challenge is based on proof at trial, rather than on the face of the indictment, "[t]o satisfy the statute of limitations, the Government ha[s] to show the conspiracy continued to exist within five years before the indictment and a conspirator performed at least one overt act to further the conspiracy within the five-year period." *United States v. Rabinowitz,* 56 F.3d 932, 933 (8th Cir.1995) (emphasis added). Moreover, at trial, "the government may satisfy its requisite showing under the statute of limitations by means of an overt act *not* listed in the indictment." *Dolan,* 120 F.3d at 866 (emphasis added) (citing cases).

■ In *Rabinowitz,* the defendant argued that his conspiracy conviction had to be set aside on the basis of a statute of limitations problem, because there was no evidence of an overt act in furtherance of a conspiracy to commit wire fraud after August 25, 1988, five years before his indictment. *Rabinowitz,* 56 F.3d at 933. The appellate court, however, rejected this argument. Instead, the court found that the district court instructed the jury that, to find Rabinowitz guilty of conspiracy to commit wire fraud, it must find the conspiracy continued past August 25, 1988. *Id.* The court also concluded that a reasonable jury could have found, based on the evidence, that Rabinowitz committed an overt act within the limitations period. *Id.* at 933–34. Therefore, the court held that the statute of limitations was satisfied. *Id.* at 934. The decision in *Rabinowitz* thus demonstrates that whether or not an overt act in furtherance of a conspiracy occurred within the limitations period is properly a question for the jury, so that the question of the timeliness of the charge can be addressed by proper jury instructions and elicitation of appropriate findings from the jury.

■ The parties also dispute whether the conspiracy charge in Count 7 is timely—and also whether or not it identifies single or multiple conspiracies—in part, on the basis of whether or not efforts at concealment continue a conspiracy. In *Rabinowitz,* the Eighth Circuit Court of Appeals also considered the impact of acts of concealment on continuation of a conspiracy, as follows:

> The district court properly instructed the jury that acts of concealment further a conspiracy *when concealment is a central purpose of the conspiratorial agreement. Grunewald v. United States,* 353 U.S. 391, 405, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957). *When concealment is necessary to accomplish a crime successfully, acts of concealment are prop-

*erly considered to be within the conspiracy. United States v. Gleason,* 766 F.2d 1239, 1242 (8th Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986). Indeed, we have held that a conspiracy covered by 18 U.S.C. § 371 necessarily contemplates acts of concealment to accomplish its objectives. *Id.; see Tramp v. United States,* 978 F.2d 1055, 1055 (8th Cir.1992) (*per curiam*) (indictment for conspiracy under 18 U.S.C. § 371 proper when government alleges defendant conspired to violate wire fraud statute). We conclude the statute of limitations was satisfied.

*Rabinowitz,* 56 F.3d at 934 (emphasis added). Thus, whether "acts of concealment" within the limitations period are overt acts that continue a conspiracy, for statute of limitations or other purposes, depends upon whether or not "concealment is a central purpose of the conspiratorial agreement." *Id.*

■ The limitations period on a conspiracy also begins to run when a conspirator withdraws from a continuing conspiracy. *See Grimmett,* 236 F.3d at 453 & 455 (citing *Hyde v. United States,* 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912)). However, it is not clear even from the briefing of the parties raising this issue what, if any, application "withdrawal" may have here, because the court cannot find in Johnson's briefing of the matters presently before the court that she actually asserts that she withdrew from the conspiracy. *See Grimmett,* 236 F.3d at 454 (stating that the defendant "ha[s] the *burden to prove* withdrawal from a criminal conspiracy, [but] the government ha[s] the burden to come forward with evidence rebutting the defendant's prima facie showing," citing *Antar, infra*) (emphasis added); *and compare United States v. Antar,* 53 F.3d 568, 582 (3d Cir.1995) (noting that " '[t]he defendant must present evidence of some affirmative act of withdrawal on his part' " to start the running of the statute of limitations, quoting *United States v. Steele,* 685 F.2d 793, 803 (3d Cir.1982), *cert. denied,* 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982), adding that "[w]e have [therefore] divided the standard for showing withdrawal into two stages. First, the defendant must come forward with evidence evincing a prima facie showing of withdrawal. If the defendant makes this prima facie showing, the burden then shifts to the government to rebut the prima facie case, 'either by impeaching the defendant's proof or by going forward with evidence of some conduct in furtherance of the conspiracy subsequent to the act of withdrawal,' " quoting *United States v. Local 560,* 974 F.2d 315, 338 (3d Cir.1992)).[2]

---

2. This court reads the reference by the majority in *Grimmett* to a criminal defendant having the burden *to prove* withdrawal from a conspiracy as an inadvertent overstatement of *Antar,* upon which the decision in *Grimmett* expressly relies. In *Antar,* the court placed the initial burden on the defendant only to *"come forward with evidence"* evincing a prima facie showing of withdrawal," and the government then bore the *burden* to rebut the defendant's prima facie case. *Antar,* 53 F.3d at 582. On the other hand, the dissenter in *Grimmett,* Judge Murphy, also stated that "the defendant bears the burden of proving her withdrawal." *Grimmett,* 236 F.3d at 456 (Murphy, J., dissenting) (citing *United States v. Maggard,* 156 F.3d 843, 851 (8th Cir.1998), *cert. denied,* 525 U.S. 1170, 119 S.Ct. 1094, 143 L.Ed.2d 93 (1999)). In *United States v. Maggard,* upon which Judge Murphy relies, the Eighth Circuit Court of Appeals did, indeed, state that the defendant "bears *the burden of proving* his withdrawal from the conspiracy." *Maggard,* 156 F.3d at 851 (emphasis added). In the present case, it is not clear that Johnson's withdrawal is actually at issue, beyond what appears to be a purely academic discussion of withdrawal in the parties' briefs, in the absence of any citation by any party to any evidence that Johnson ever withdrew or contended that she withdrew from the conspiracy charged in Count 7. Therefore, the court will devote no

### b. Duplicitous conspiracy indictments

■■■■■ Johnson contends that Count 7 is not only untimely, but duplicitous. As the Eighth Circuit Court of Appeals explained in *United States v. Moore*, 184 F.3d 790 (8th Cir.1999), *cert. denied*, 528 U.S. 1161, 120 S.Ct. 1174, 145 L.Ed.2d 1083 (2000),

> " 'Duplicity' is the joining in a single count of two or more distinct and separate offenses." *United States v. Street*, 66 F.3d 969, 974 (8th Cir.1995) (quotation marks omitted). The risk behind a duplicitous charge is that a jury may convict the defendant without unanimous agreement on a particular offense. *See id.* Duplicity concerns are not present, however, when the underlying statute is one which merely enumerates one or more ways of committing a single offense. *See id.* In that case, all of the different ways of committing that same offense may be alleged in the conjunctive in one count, and proof of any one of the enumerated methods will sustain a conviction. *See id., see also United States v. Lueth*, 807 F.2d 719, 733 (8th Cir.1986). Here, count I charged Moore with committing one offense, conspiracy to distribute a controlled substance, in two ways, with marijuana and methamphetamine. Enumerating the controlled substances did not render count I duplicitous. *See id.* at 734.

*Moore*, 184 F.3d at 793; *United States v. Nattier*, 127 F.3d 655, 657 (8th Cir.1997), *cert. denied*, 523 U.S. 1065, 118 S.Ct. 1398, 140 L.Ed.2d 656 (1998).

■■■■ "The risk inherent in a duplicitous count, however, may be cured by a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act." *Nattier*, 127 F.3d at 657; *Rabinowitz*, 56 F.3d at 933. For example, in *Rabinowitz*, the Eighth Circuit Court of Appeals concluded that, by providing proper instructions, the district court had cured any possible duplicity in a single conspiracy count that charged conspiracy by an accountant to defraud a client by using a wire transfer and to defraud the United States by impeding the IRS's assessment and collection of income taxes on the fraud proceeds. *Rabinowitz*, 56 F.3d at 933. Specifically,

> The district court instructed the jury that the Government only had to prove a conspiracy either to commit wire fraud or to impede the IRS, but that if the Government only proved a conspiracy to commit one of the two offenses, the jury must unanimously agree on which offense the defendants conspired to commit.

*Rabinowitz*, 56 F.3d at 933. The appellate court "assume[d] that the jury followed these instructions," thus curing any possible duplicity of the conspiracy count. *Id.*

Subsequently, in *Nattier*, the Eighth Circuit Court of Appeals held that the district court had cured any potential duplicity arising from a conspiracy count that charged both conspiracy to embezzle funds and to launder the unlawful proceeds of the embezzlement. *Nattier*, 127 F.3d at 658. The court explained,

> The jury instructions in this case acknowledged that count I of the indictment charged a conspiracy to commit two separate offenses—conspiracy (1) to embezzle funds and (2) to launder the unlawful proceeds of the embezzlement. The relevant instruction stated as follows:

more energy, at present, to the question of the proper allocation of burdens of production and proof on the issue of a defendant's withdrawal from a criminal conspiracy.

It would be sufficient if the Government proves, beyond a reasonable doubt, a conspiracy to commit one of those offenses; but, in that event, in order to return a verdict of guilty, you must unanimously agree upon which of the two offenses was the subject of the conspiracy. If you cannot agree in that manner, you must find the defendants not guilty.

(Appellant Nattier's Adden., Jury Instr. No. 14.). "We assume, as we must, that the jury followed these instructions." *[United States v.] Karam*, 37 F.3d [1280,] 1286 [ (8th Cir.1994), *cert. denied*, 513 U.S. 1156, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995) ]. We conclude that this limiting instruction was sufficient to cure the risk of a nonunanimous verdict on the conspiracy charge, and the district court did not err by denying Nattier's motion to dismiss count I.

*Nattier*, 127 F.3d at 658.

Thus, in both *Rabinowitz* and *Nattier*, the Eighth Circuit Court of Appeals has recognized that proper jury instructions can cure a duplicitous indictment. Moreover, the court has provided specific guidance on what instructions can perform that cure.

### c. *Single or multiple conspiracies*

■ As mentioned above, both Johnson's timeliness argument and her duplicity argument hinge on whether Count 7 charges a single conspiracy or multiple conspiracies. As this court pointed out in a previous ruling in this case, where a criminal conspiracy is charged, " '[t]he alleged agreement itself is the prohibited conduct targeted by the conspiracy statute, and there is only one offense where there is only one agreement.' " *United States v. Johnson*, 225 F.Supp.2d 1022, 1056 (N.D.Iowa 2002) (quoting *United States v. Abboud*, 273 F.3d 763, 766 (8th

Cir.2001), in turn citing *Braverman v. United States*, 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942)). Whether the government has ultimately proved that there was a single conspiracy or multiple conspiracies is a question of *fact*. *United States v. Contreras*, 283 F.3d 914, 916 (8th Cir. 2002). When an indictment alleges a single conspiracy, but the government *ultimately proves* multiple conspiracies, reversal is required if the variance affects a defendant's substantial rights. *See Kotteakos v. United States*, 328 U.S. 750, 756–57, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

■ More immediately, of course, the question here is whether the conspiracy count is duplicitous, because Johnson contends that it *charges* two (or more) separate conspiracies in a single count. *Moore*, 184 F.3d at 793. As to duplicity, this court noted above that proper instructions to the jury may cure the problem. On the other hand, as the Eighth Circuit Court of Appeals has explained, "If the evidence supports a single conspiracy, the failure to give a multiple conspiracy instruction is not reversible error." *Contreras*, 283 F.3d at 916 (citing *United States v. Roach*, 164 F.3d 403, 412 (8th Cir.1998), *cert. denied*, 528 U.S. 845, 120 S.Ct. 117, 145 L.Ed.2d 99 (1999), in turn citing *United States v. Cabbell*, 35 F.3d 1255, 1262 (8th Cir.1994)).

■ Turning to the fact question of whether there are multiple conspiracies, or only one, the Eighth Circuit Court of Appeals reiterated in *Contreras* that " '[a] single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions.' " *Contreras*, 283 F.3d at 916 (again quoting *Roach*, 164 F.3d at 412). *United States v. Burns*, 276 F.3d 439, 444 (8th Cir.2002). Also,

[a]ll conspirators need not even know each other. *See United States v. Rosnow,* 977 F.2d 399, 405 (8th Cir.1992) (per curiam), *cert. denied,* 507 U.S. 990, 113 S.Ct. 1596, 123 L.Ed.2d 159 (1993). For a single conspiracy to exist, " 'it is sufficient that ... the co-conspirators are aware of the general nature and scope of the conspiracy and knowingly joined in the overall scheme.' " *United States v. Pullman,* 187 F.3d 816, 821 (8th Cir.1999) (quoting *United States v. Zimmerman,* 832 F.2d 454, 457 (8th Cir. 1987)) (per curiam).

*Burns,* 276 F.3d at 444; *United States v. Lopez–Arce,* 267 F.3d 775, 781–82.

 In *United States v. Abboud,* 273 F.3d 763 (8th Cir.2001), a case considering the converse situation from the one presented here—whether two separate indictments actually charged the same conspiracy for double jeopardy purposes—the Eighth Circuit Court of Appeals provided more concrete guidance on what factors are relevant to determination of whether there were multiple conspiracies, or only one:

> A "totality of the circumstances" test is used to determine whether there is more than one conspiracy and it involves consideration of such factors as (1) the time period involved; (2) the individuals charged as coconspirators; (3) the offenses charged; (4) the overt acts charged or any other description of the offenses charged which indicate the nature and scope of the activity sought to be punished; and (5) the places where the alleged conspiratorial acts took place. *United States v. Thomas,* 759 F.2d 659, 662 (8th Cir.1985).

*Abboud,* 273 F.3d at 767; *see also Lopez–Arce,* 267 F.3d at 782 (considering the same factors to determine whether a defendant had participated in the same conspiracy charged in the indictment or a different conspiracy).

In *Abboud,* the court explained some of these factors in further detail in its consideration of the facts of the case. For example, as to the first factor, the court explained that, "[e]ven though a subsequent conspiracy is alleged to have occurred during some of the same time as a prior conspiracy, it is not necessarily the same conspiracy." *Id.* (citing *United States v. Kienzle,* 896 F.2d 326, 329 (8th Cir.1990)). Also, as to the second factor, the court explained that "[t]he substantial increase in the number of coconspirators in the [later] indictment and the expanded scope of criminal activity are factors which suggest that there were separate conspiracies and that the [defendants] assumed different roles, duties, and responsibilities in the second conspiracy." *Id.* at 768. As to the third factor, the court explained, "Similarities between charges in two indictments d[o] not necessarily mean that there was a single conspiracy." *Id.* Translated to the circumstances of this case, this court concludes that application of this principle here means that similarities between substantive objectives in one charge do not necessarily mean that there was a single conspiracy encompassing all of those objectives. As the Eighth Circuit Court of Appeals reiterated in *Abboud,* " '[t]he fact that both indictments charge [or two sets of circumstances involve] some of the same statutory violations is not particularly important. It is possible to have two different conspiracies to commit exactly the same type of crime.' " *Id.* (quoting *United States v. Thomas,* 759 F.2d 659, 666 (8th Cir.1985)). As to the fourth factor, concerning overt acts, the court explained that it had "recognized separate conspiracies where the scope of the second conspiracy was broader or qualitatively different from the first charged." *Id.* As to the fifth factor, places where conspiratorial acts oc-

curred, the court explained that "[e]ven if two conspiracies contain some geographical overlap, there may be separate conspiracies if each also involves distinct places." *Id.* at 769.

### 3. Application of the law

#### a. The count in question

A somewhat fuller statement of the conspiracy count at issue here may substantially assist in determining whether that count is duplicitous and/or time-barred in whole or in part, because it states multiple conspiracies instead of a single conspiracy. Count 7 of the superseding indictment charges Johnson with a "conspiracy" offense, described above, in understated terms, as "conspiracy to interfere with witnesses." It actually charges that, between about July 1, 1993, and continuing thereafter until about February 24, 1998, Angela Johnson knowingly and willfully combined, conspired, confederated, and agreed with other persons known and unknown to the grand jury to commit offenses against the United States, which are identified as (1) killing or attempting to kill another person with the intent to prevent that person's attendance or testimony at an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A); (2) killing or attempting to kill another person with intent to prevent communication by that person to a law enforcement officer of information relating to the commission or possible commission of a federal offense or violations of conditions of release pending judicial proceedings in violation of 18 U.S.C. § 1512(a)(1)(C); (3) knowingly using intimidation, physical force, threats, or otherwise corruptly to persuade another person with intent to influence, delay, or prevent testimony of that person at an official proceeding in violation of 18 U.S.C. § 1512(b)(1); (4) knowingly using intimidation, physical force, threats, or otherwise corruptly to persuade another person with the intent to hinder, delay, or prevent communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense or a violation of conditions of release pending judicial proceedings in violation of 18 U.S.C. § 1512(b)(3); and (5) soliciting, commanding, inducing, and endeavoring to persuade a person to commit a violent felony with intent that such person engage in such conduct under circumstances strongly corroborative of that intent in violation of 18 U.S.C. § 373, and all in violation of 18 U.S.C. § 371. *See* Superseding Indictment, Count 7.

This count next alleges "Background to Overt Acts," including events in 1993 consisting of Gregory Nicholson's agreement to cooperate with law enforcement officers in an investigation of criminal activity by Dustin Honken; Honken's arrest; Nicholson's testimony before a federal grand jury implicating Honken; Honken's expression of a willingness to enter into a plea agreement; the disappearance of Lori, Kandi, and Amber Duncan, as well as Nicholson; Honken's indication thereafter that he no longer desired to plead guilty; and the dismissal in 1995 of federal charges against Honken. *Id.* The "Background to Overt Acts" continues with allegations that another joint state/federal investigation of Honken and others began in September 1995, during which Daniel Cobeen agreed to cooperate and to work with Special Agent John Graham of the Iowa Division of Narcotics Enforcement; the recovery, pursuant to a search warrant, of methamphetamine lab equipment from Honken's residence; Cobeen's testimony before a federal grand jury followed by indictment of Honken and Timothy Cutkomp on federal drug-trafficking charges; Honken's arrest and pretrial release; Cutkomp's revelation to investigators of Honk-

en's plan to destroy evidence and kill witnesses, including Cobeen and Graham; "controlled meetings" between Cutkomp and Honken during which the two allegedly discussed that plan; and Honken's arrest and revocation of pretrial release. *Id.*

Count 7 next alleges the following:

Based in part upon the matters set forth above, ANGELA JOHNSON and Dustin Honken undertook a plan to kill individuals who cooperated against Dustin Honken, or participated in the investigation of Dustin Honken, or could provide information against Dustin Honken, including Gregory Nicholson, Lori Duncan, Kandi Duncan, Amber Duncan, Terry DeGeus, Daniel Cobeen, Timothy Cutkomp, and Special Agent John Graham. To effect this plan, ANGELA JOHNSON, Dustin Honken, and others performed various overt acts in part set out below.

*Id.* There follows a lengthy listing of overt acts allegedly committed to effect the objects of the conspiracy, including acts between July 1993 and the fall of 1998. *Id.*

#### b. *Identity, duplicity, and timeliness on the face of the indictment*

■ As noted above, when a defendant is charged with conspiracy, the limitations period begins to run from the occurrence of the last overt act committed in furtherance of the conspiracy. *See Perry,* 152 F.3d at 904; *Dolan,* 120 F.3d at 864. Here, the last overt acts allegedly in furtherance of the conspiracy occurred in 1998, well within the five-year statute of limitations period prior to the original indictment on July 2000, as required by 18 U.S.C. § 3282. Thus, if only a single conspiracy is alleged, the conspiracy count appears to be timely.

Furthermore, the government contends that what is alleged is a single conspiracy the entire purpose of which was conceal-ment of criminal activity, even if the various offenses charged as objectives of the conspiracy involve murder of witnesses or attempts to intimidate or solicit the murder of witnesses. As noted above, the question of whether concealment continues a conspiracy depends upon whether "concealment is a central purpose of the conspiratorial agreement," that is, whether "concealment is necessary to accomplish a crime successfully." *See, e.g., Rabinowitz,* 56 F.3d at 934. In *Rabinowitz,* the Eighth Circuit Court of Appeals stated that it "ha[d] held that a conspiracy covered by 18 U.S.C. § 371 necessarily contemplates acts of concealment to accomplish its objectives," *id.,* and a conspiracy in violation of § 371 has been charged here.

The language used in *Rabinowitz* suggests that *any* conspiracy covered by § 371 necessarily contemplates acts of concealment. In *Rabinowitz,* however, the substantive objectives of the conspiracy were defrauding a client by using a wire transfer and defrauding the United States by impeding the IRS's assessment and collection of income taxes on the fraud proceeds. *Id.* at 933. The case on which *Rabinowitz* relies for the proposition that a conspiracy covered by § 371 necessarily contemplates concealment, *United States v. Gleason,* 766 F.2d 1239 (8th Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986), in turn, states "We agree with other courts that have held that a conspiracy covered by 18 U.S.C. § 371, *such as the one charged here,* necessarily contemplates acts of concealment to accomplish its objectives." *Gleason,* 766 F.2d at 1242 (emphasis added). In *Gleason,* the conspiracy also involved a fraud scheme, conspiracy to defraud the United States by obstructing the Department of Treasury in collection of income taxes. *Id.* at 1240. So, too, did each of the cases on which *Gleason* in turn relied. *See United*

*States v. Mackey,* 571 F.2d 376, 379 & 383–84 (7th Cir.1978) ("Count I charged the defendant with conspiracy to evade payment of income tax and to defraud the United States by impeding the Internal Revenue Service in the collection of revenue in violation of 18 U.S.C. § 371."); *United States v. Diez,* 515 F.2d 892, 897–98 (5th Cir.1975) ("In this case the Government charged a conspiracy to defraud the United States by impeding the Internal Revenue Service in the collection of income tax."), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976). It seems readily apparent that a conspiracy to commit fraud necessarily contemplates concealment, because fraud depends entirely upon concealment of the truth. However, the conspiracy count against Johnson does not involve fraud or tax fraud, so that, even if it is a conspiracy "covered by" 18 U.S.C. § 371, it does not charge a conspiracy or conspiracies "such as the one[s] charged" in Rabinowitz, Gleason, or the cases on which *Gleason* relied.

Indeed, Johnson counters the government's contentions by pointing out that what is alleged here is one or more conspiracies to kill or intimidate witnesses, and any conspiracy to commit murder ordinarily ends with the murder. She relies on *United States v. McKinney,* 954 F.2d 471, 475 (7th Cir.), *cert. denied,* 506 U.S. 1023, 113 S.Ct. 662, 121 L.Ed.2d 587 (1992), which held that informing the leader of a prison gang who had ordered the murder of a witness that the murder had been carried out was not an act in furtherance of the conspiracy, because the murders ended the conspiracy. Thus, *McKinney* did not directly consider the circumstance in which the conspiracy allegedly included either concealment of the murder of witnesses, nor did it consider whether the murder of witnesses constituted concealment of other criminal activity.

In the present case, Count 7 alleges that the "plan" of the conspiracy was "to kill individuals who cooperated against Dustin Honken, or participated in the investigation of Honken, or could provide information against Dustin Honken," and that, "to effect this plan, ANGELA JOHNSON, Dustin Honken, and others performed various overt acts." *See* Superseding Indictment, Count 7. Therefore, the conspiracy, as charged, contemplated acts to conceal criminal activity, specifically, the murder of witnesses to conceal Honken's drug-trafficking activities. *See Rabinowitz,* 56 F.3d at 934. Consequently, the last overt act of concealment in furtherance of the conspiracy, as alleged, started the clock running on the limitations period for the § 371 conspiracy charged here.

### c. *Identity, duplicity, and timeliness as questions of proof*

The court concluded, above, that, as charged, Count 7 alleges a single conspiracy "to kill individuals who cooperated against Dustin Honken, or participated in the investigation of Honken, or could provide information against Dustin Honken." *See* Superseding Indictment, Count 7. Johnson, however, contends that, notwithstanding the government's vague attempts to meld all of the objectives and overt acts alleged in Count 7 into a single conspiracy, Count 7 actually alleges multiple conspiracies, one or more involving the murder of witnesses in 1993, and another or others involving attempts to intimidate or solicit the murder of witnesses in 1995 and 1996. That being so, Johnson contends, Count 7 is not only duplicitous, but untimely as to the earlier conspiracy or conspiracies, and so must be dismissed. The court turns to the question of whether Johnson's contentions can or must be resolved now, or whether the court can, instead, leave for the jury the determination of matters criti-

cal to duplicity and timeliness of the conspiracy count, based on the proof presented by the government at trial.

■■■ *i. Identity or duplicity?* Although "[d]uplicity concerns are not present ... when the underlying statute is one which merely enumerates one or more ways of committing a single offense," *see Moore,* 184 F.3d at 793, that is not the situation here. It is true that the first four substantive offenses specifically pleaded as objectives of the conspiracy— (1) killing or attempting to kill another person with the intent to prevent that person's attendance or testimony at an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A); (2) killing or attempting to kill another person with intent to prevent communication by that person to a law enforcement officer of information relating to the commission or possible commission of a federal offense or violations of conditions of release pending judicial proceedings in violation of 18 U.S.C. § 1512(a)(1)(C); (3) knowingly using intimidation, physical force, threats, or otherwise corruptly to persuade another person with intent to influence, delay, or prevent testimony of that person at an official proceeding in violation of 18 U.S.C. § 1512(b)(1); and (4) knowingly using intimidation, physical force, threats, or otherwise corruptly to persuade another person with the intent to hinder, delay, or prevent communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense or a violation of conditions of release pending judicial proceedings in violation of 18 U.S.C. § 1512(b)(3)—enumerate different ways of violating the statute prohibiting tampering with witnesses. *Cf. Moore,* 184 F.3d at 793. However, the fifth objective specifically pleaded, soliciting, commanding, inducing, and endeavoring to persuade a person to commit a violent felony with intent that such person engage in such conduct under circumstances strongly corroborative of that intent, is defined by a different statute, 18 U.S.C. § 373. Thus, the government cannot rely directly here on the ground that it has alleged a conspiracy involving only several different ways to violate a single statute as a means of avoiding duplicity of the conspiracy charge. *Cf. id.* More importantly, the court cannot say, as a matter of law, that Count 7 is *not* duplicitous based solely on enumeration in the charge of several different ways to violate a single statute. *Id.*

Instead, the court turns to consideration of the factors in the "totality of the circumstances" test stated in *Abboud* for determination of whether the government has pleaded or may be able to prove a single or multiple conspiracies. *See Abboud,* 273 F.3d at 767. The first factor in that test, the time period involved, may here suggest two conspiracies or groups of conspiracies, as the overt acts appear to cluster into two distinct time periods: One cluster surrounds the murder of the first five witnesses in 1993, and the second cluster surrounds the renewed investigation of Honken's drug-trafficking activities and further attempts to intimidate or solicit the murder of witnesses in 1995 and 1996. *See Abboud,* 273 F.3d at 767. Even if what Johnson calls the second conspiracy—relating to events in 1995 and 1996—occurred during some of the same time as what she calls the first conspiracy—relating to events in 1993—the two conspiracies are not necessarily the same conspiracy. *Id.* As to the second and third factors, the individuals charged as coconspirators and the offenses charged, there also appears to be some increase in the number of coconspirators and some expansion of the scope of criminal activity later in the purportedly single conspiracy, which may suggest that there are, in fact, two or more separate

conspiracies. *Id.; and compare Contreras,* 283 F.3d at 916 (" 'A single conspiracy may exist even if the participants and their activities change over time, and even if many participates are unaware of, and uninvolved in, some of the transactions.' "). Notwithstanding that the substantive offenses identified as objectives of the conspiracy are defined my two distinct statutes, 18 U.S.C. § 1512 and 18 U.S.C. § 373, the court nevertheless recognizes some similarity between the substantive offenses alleged to be objectives of the conspiracy: The purpose of the conspiracy to solicit murders in violation of 18 U.S.C. § 373 was allegedly to silence or intimidate witnesses, the same purpose attributable to the conspiracy to murder witnesses in violation of 18 U.S.C. § 1512. However, such similarity in the substantive objectives of the conspiracy does not necessarily mean that there was a single conspiracy encompassing all of those objectives. *Id.* Also, looking at the overt acts charged, the fourth factor identified in *Abboud,* there is some suggestion that the later attempts to intimidate or solicit the murder of witnesses in 1995 and 1996, pursuant to what Johnson calls the second conspiracy, were "qualitatively different" from the direct action of murdering witnesses allegedly committed by Honken and Johnson in 1993, pursuant to what Johnson calls the first conspiracy. *Id.*

However, it is in circumstances such as those alleged here that it is appropriate that determination of whether the government can ultimately *prove* a single conspiracy, or instead proves multiple conspiracies, *is a question of fact for the jury. See Contreras,* 283 F.3d at 916. The court concluded, above, that the government had at least adequately *alleged* a single, timely conspiracy "to kill individuals who cooperated against Dustin Honken, or participated in the investigation of Honken, or could provide information against Dustin Honk-

en." *See* Superseding Indictment, Count 7. The court is inclined, therefore, to leave with the jury the question of whether the government can ultimately prove such a single conspiracy.

Johnson contends, however, that the court cannot effectively leave to the jury the determination of duplicity, because attempting to formulate proper instructions will be difficult, if not impossible, in light of the complexity of the government's allegations and the possible prejudice to her of leaving the matter unresolved until the end of trial. The court is not persuaded. Both *Rabinowitz* and *Nattier* teach that the court can cure any possible duplicity in a single conspiracy count by properly instructing the jury that the Government only has to prove a conspiracy to commit one of the substantive offenses alleged to be an objective of the conspiracy, but that the jury must unanimously agree on which offense or offenses the defendant conspired to commit. *See Rabinowitz,* 56 F.3d at 933; *Nattier,* 127 F.3d at 658.

***ii. Timeliness.*** *Rabinowitz* also teaches that it is appropriate, when the jury is properly instructed, to leave to the jury the determination of whether a conspiracy charge is timely, based on the offense or offenses that the jury finds were objectives of the conspiracy and the overt acts that the jury finds were committed in furtherance of such a conspiracy. *See Rabinowitz,* 56 F.3d at 933. For example, the court must instruct the jury that, to find Johnson guilty of conspiracy to commit murders of witnesses with the intent to prevent the witness's attendance or testimony at an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A), the jury must find that overt acts in furtherance of that conspiracy continued past July 26, 1995, five years before the original indictment. *Id.*

#### d. Prejudice

Finally, the court concludes that Johnson will not be prejudiced by leaving for jury determination questions of whether Count 7 alleges one or more conspiracies and whether any of such conspiracies were timely charged. Count 7 alleges essentially a conspiracy to commit each of the substantive offenses previously alleged in the indictment. Because none of those charges has been dismissed, evidence concerning Johnson's alleged commission of those offenses will already be before the jury. Therefore, there is no potential that evidence of a time-barred conspiracy, or overt acts pursuant to that time-barred conspiracy—which otherwise might be properly excluded—might improperly creep in and prejudice Johnson's right to a fair trial.

Nor is the likely complexity of proper instructions to the jury a reason to take from the jury questions properly within the jury's domain, as provided, for example, in *Rabinowitz*, 56 F.3d at 933–34. However, it behooves the parties to assist the court in drafting instructions that adequately characterize what Johnson contends are the various *separate* and *untimely* conspiracies alleged in Count 7, so that the questions of the timeliness of the conspiracy charges and whether the conspiracy count charges a single or multiple conspiracies are properly and coherently presented to the jury, in such a way as to elicit the necessary findings by the appropriate finder of fact.

Finally, the court does not believe that Johnson can properly invoke the rule of liberal interpretation of statutes of limitations for criminal offenses in favor of repose, *see Grimmett*, 236 F.3d at 456; *Dolan*, 120 F.3d at 864, as a ground for barring jury determination of the timeliness of the conspiracy charge as it relates to conspiracy to commit substantive offenses prior to the limitations period. The law concerning when the statute of limitations begins to run on a conspiracy offense appears to be well-settled, *see, e.g., Rabinowitz*, 56 F.3d at 933 ("To satisfy the statute of limitations, the Government ha[s] to show the conspiracy continued to exist within five years before the indictment and a conspirator performed at least one overt act to further the conspiracy within the five-year period."), so that barring jury determination would be a matter of ignoring, not interpreting, the applicable statute of limitations.

### III. CONCLUSION

Therefore, for the reasons stated above,

1. Johnson's June 24, 2002, motion to dismiss Count 7 due to duplicity (docket no. 326) is **denied**.

2. Johnson's June 24, 2002, motion to dismiss Counts 1 through 5 and 7 pursuant to 18 U.S.C. § 3282 due to the statute of limitations on non-capital crimes (docket no. 328) is **denied in its entirety**.

**IT IS SO ORDERED.**